No. 52,413

State of Kansas, *Appellee,* v. Terry L. Crossman, *Appellant.*

(624 P.2d 461)

Opinion filed February 28, 1981.

*Gerald L. Green,* of Schmidt, O'Sullivan & Langley, Chartered, of Hutchinson, argued the cause and was on the brief for the appellant.

*Timothy J. Chambers,* assistant county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for the appellee.

The opinion of the court was delivered by

McFarland, J.: Defendant appeals his jury trial conviction of two counts of indecent liberties with a child (K.S.A. 1980 Supp. 21-3503) and one count of aggravated sodomy (K.S.A. 21-3506).

On April 11, 1979, Lori G., age fourteen, went to the office of her school counselor, Geneva Bolerjack. The child was upset and discussed an altercation which had just occurred between the child and her mother, Jackie Crossman. Lori stated she could not return home. Later in the day, while discussing the home situation, Lori advised Ms. Bolerjack that her stepfather, Terry Crossman, had been having sexual relations with her. Juvenile authorities were called, an investigation commenced, and the charges herein were filed against defendant.

The specifics of each charge are as follows:

Count 1: Sexual intercourse with the child in May, 1978.

Count 2: Oral copulation with the child in early 1979.

Count 3: Lewd fondling or touching of the child on April 10, 1979.

Defendant was convicted of all three counts by jury trial and appeals therefrom. Defendant was represented by retained counsel, Kerry Granger, at trial. On appeal he is represented by appointed counsel, Gerald L. Green.

The first issue is whether the trial court erred in allowing testimony relative to other instances of sexual misconduct between defendant and the complaining witness and in failing to give a limiting instruction relative to such testimony.

The complaining witness testified extensively as to the complex family relationships among herself, her mother, her stepfather, her sister and her five brothers. Defendant is portrayed as a domineering and brutal man. The mother-daughter relationship is one of constant quarreling and bickering. The sexual relationship between the complaining witness and defendant extended over several years in varying degrees. Being the object of defendant's sexual desire had actually aided the complaining witness in two respects: (1) defendant ceased his severe discipline of her, and (2) defendant took the child's side in her frequent disputes with her mother. The mother testified as a defense witness and was supportive of defendant, stating she did not believe the child. The prosecution introduced evidence that on one occasion several years earlier the mother had summoned the police for defendant's sexual molestation of the child.

In testifying about other sexual acts between herself and defendant the child spoke in rather general terms as opposed to specific accounts of dates, times and places. Illustrative are the following questions and answers on direct examination, which follow the child's account of the events involved in Count 1:

"Q. [W]ere there other occasions where you had sexual intercourse with Terry [Crossman]?

"A. Yeah.

"Q. Do you have any way of telling us how many occasions that would have been on?

"A. There were a lot of times."

This was followed by testimony that sexual relations occurred in a shed located behind the parties' home, as well as in the family camper.

There was no objection made to the questions asked relative to uncharged sexual encounters, nor was a limiting instruction requested, discussed, or given. Accordingly, there was no occasion for the prosecution to state the legal basis for such testimony

On appeal defendant contends the testimony was inadmissible pursuant to K.S.A. 60-455 and, alternatively, if it were admissible under said statute then reversible error occurred in the court's failure to give a limiting instruction.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

This statute has repeatedly been before this court and a considerable body of law has been developed relative to its application. The basic principles were set forth in *State v. Bly,* 215 Kan. 168, 175-177, 523 P.2d 397 (1974). In the ensuing years refinements to the applicable principles have been added, but the same are not relevant herein. In *State v. Whitehead,* 226 Kan. 719, Syl. ¶ 2, 602 P.2d 1263 (1979), this court held:

"Generally, in every case where evidence of other crimes is admissible solely under the authority of 60-455 the trial court should give an instruction limiting the purpose for which evidence of the similar offense is to be considered. The failure of the trial court to give a limiting instruction, regardless of request, is of such a prejudicial nature as to require the granting of a new trial."

Therefore, the failure to give a limiting instruction would constitute reversible error unless the evidence was admissible independent of K.S.A. 60-455.

K.S.A. 60-455 is essentially a codification of prior case law and does not represent a material change. See *State v. Wright,* 194 Kan. 271, 274, 398 P.2d 339 (1965).

22A C.J.S., Criminal Law § 691 (31), p. 880, contains the following pertinent discussion:

"*Indecent liberties with child.* In a prosecution for taking indecent liberties with a child, evidence of other similar acts with the same child is admissible, whether such other acts occurred before or after the act charged, provided they are not too remote, not for the purpose of proving distinct offenses, but to show the relationship and familiarity of the parties, accused's intent, and to corroborate the

testimony of the prosecuting witness as to the act charged. However, evidence of indecent liberties with another child is ordinarily inadmissible, but may be admissible under certain conditions, as where it may tend to show a common pattern, scheme, or plan on the part of accused."

See also 77 A.L.R.2d 841 for an extensive annotation on the subject.

Probably the most common use of K.S.A. 60-455 involves the issue of identity. For example, a liquor store is robbed. There is no question that the store was robbed. The only issue is who did it. The prosecution then seeks to introduce evidence that the defendant has previously committed another robbery on a specified date, utilizing a similar *modus operandi.* The purpose of the evidence is to establish that the defendant was the robber of the liquor store. The utilization of one specific crime to prove a separate and independent crime is a sensitive area which needs safeguards.

In the case before us the veracity of the complaining witness was the key issue in the trial. The defense strategy (discussed more in depth later in this opinion) was to portray Lori as a mentally unstable child who had made up the charged sexual activities. In this regard, defense counsel cross-examined Lori extensively on the entire history of sexual relations between herself and defendant, as well as the family relationship among herself, her mother, and defendant.

In determining the crucial matter of Lori's credibility there are basic questions of why she tolerated the situation for so long, why she did not discuss the matter with her mother, etc. The entire complex family relationship, including prior sexual encounters between Lori and defendant, is highly relevant in this case.

We conclude that in cases of crimes involving illicit sexual relations or acts between an adult and a child, evidence of prior acts of similar nature between the same parties is admissible independent of K.S.A. 60-455 where the evidence is not offered for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged.

This is not to say that evidence of the prior acts could not have been introduced pursuant to K.S.A. 60-455 to establish intent (see *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012 [1977]). We are simply holding that under the facts herein such evidence was admissible

independent of K.S.A. 60-455. As this court stated in *State v. Martin,* 208 Kan. 950, 952, 495 P.2d 89 (1972):

"K.S.A. 60-455 does, it is true, prohibit proof of a defendant's disposition to commit crimes as a basis for an inference that he committed an offense on a specific occasion, except where such evidence is admissible to prove some relevant fact such as motive, intent, plan, etc. [Citation omitted.] This, however, is not to say that evidence directly relating to the commission of the offense charged is not independently admissible—and without limiting instructions—even though it could also have been admitted under 60-455 for limited purposes. Even though evidence may be inadmissible on the issue of character, it may be relevant otherwise—and thus be admissible."

No error having been shown as to Issue No. 1, we turn our attention to Issue No. 2. This issue involves whether the admission of testimony relative to a lie detector test was prejudicial error.

Reference to lie detector tests is found in the testimony of two witnesses. The first reference comes in on the direct examination of the complaining witness as follows:

"Q. (By Mr. O'Sullivan) Do you remember now talking to Mr. Lyons?
"A. Yes.
"Q. And what was the reason you were talking to him?
"A. Find out whether I was telling the truth or not.
"Q. Okay. Was there a particular test that he was going to run on you in that regard?
"A. A lie detector test."

From this point on the State asked the witness about prior conversations with Mr. Lyons. The witness did not indicate such a test was actually given or state the results thereof.

The other reference to lie detector tests occurs in the direct examination of Debby Brown, an S.R.S. employee. In her testimony the following answer was given to a question pertaining to the relationship of Lori and her mother, Mrs. Crossman.

"A. Yes. On 4-23 in my office it was a very poor visit. Mrs. Crossman brought a Bible. She said it was Lori's and was continually badgering her about taking the Bible and reading it, finding the truth in it. She also talked to Lori about that she said I don't believe that Terry did any of these things and that a lie detector test—that lie detector tests aren't accurate. She was referring to—
"Q. Without directing your testimony to anything having to do with lie detector tests, please."

No further reference was made to lie detector tests. No objection was made to either witness's testimony relative to lie detector testing.

In the absence of stipulation between the parties the results of a polygraph examination are not admissible in evidence. *State v. Blosser,* 221 Kan. 59, Syl. ¶ 1, 558 P.2d 105 (1976).

In the case herein neither witness testified that a polygraph test was given to Lori. No mention of the result of any such test was made. The reference to a lie detector test by Debby Brown comes in through an unresponsive answer to a question by the prosecution. The State voluntarily terminated further inquiry.

No reversible error is shown as to Issue No. 2.

The third issue raised is whether the failure of defense counsel to lodge objections to the areas of testimony discussed in Issues Nos. 1 and 2 constituted ineffective assistance of counsel.

The rules relative to determination of effective assistance of counsel were stated in *Schoonover v. State,* 2 Kan. App. 2d 481, Syl. ¶¶ 2-4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978), and iterated in *State v. Voiles,* 226 Kan. 469, 470-471, 601 P.2d 1121 (1979), as follows:

"The right to effective assistance of counsel presupposes that counsel will be competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed."

"Conduct of defense counsel which is so dishonest, incompetent or inadequate as to amount in practical effect to no counsel at all clearly violates a defendant's Sixth Amendment right to counsel. However, conduct which amounts to a substantial deviation from that expected of a reasonably competent lawyer in the community, such that no lawyer of average ability would engage in it, and which causes the client's conviction or otherwise works to the client's substantial disadvantage, is also a deprivation of the constitutional guarantee of 'effective' counsel."

"In applying the foregoing standard to counsel's performance, the effective assistance of counsel cannot be equated with the successful assistance of counsel. The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells."

In cases of this nature, a defense counsel does not often have many options in preparing a defense. If the complaining witness is telling the truth, then the defendant is guilty. Often, the only viable defense is that the complaining witness is not telling the truth. Defense counsel elicited evidence herein to the effect that (1) Lori was a mentally unstable child—even to the point of being potentially suicidal; (2) Lori's own mother did not believe her; and (3) the child had given differing accounts of the numerous

sexual encounters with defendant. Lori testified to a long history of sexual activities with defendant, but did not complain to outsiders or family members. All of this has a bearing on her credibility. The failure to object can well be considered part of reasonable defense strategy.

As to the lie detector test testimony, no results were admitted. A defense objection thereto would merely indicate to the jury that perhaps defendant was seeking to suppress damaging evidence.

We have applied the test as set forth in *State v. Voiles,* 226 Kan. 469, and we conclude defendant was not denied effective assistance of counsel.

The final issue is a challenge to the sufficiency of the evidence. The appropriate standard of appellate review was set forth in *Voiles,* Syl. ¶ 6, as follows:

"In a criminal action where the defendant contends the evidence at trial was insufficient to sustain a conviction, the standard of review on appeal is: Does the evidence when viewed in the light most favorable to the prosecution convince the appellate court that a rational factfinder could have found the defendant guilty beyond a reasonable doubt?"

In order to convict the defendant of all three counts, the jury had only to believe the testimony of the complaining witness. This the jury obviously did. Applying the test as set forth in *Voiles,* we have no hesitancy in concluding that a rational factfinder could have found defendant guilty beyond a reasonable doubt. The evidence is accordingly sufficient to support the conviction.

The judgment is affirmed.