(877 P.2d 443)

No. 68,238

STATE OF KANSAS, *Appellee,* v. DONALD M. LAVERY, *Appellant.*

Petition for review denied 253 Kan. 862 (1993).

Opinion filed August 13, 1993.

*Joseph L. Dioszeghy,* of Overland Park, for appellant.

*W. Scott Toth,* assistant district attorney, *Paul J. Morrison,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before BRISCOE, C.J., BRAZIL and GREEN, JJ.

BRAZIL, J.: Donald M. Lavery appeals the jury's guilty verdict on the charge of aggravated criminal sodomy pursuant to K.S.A. 21-3506. Lavery contends the district court erred in denying his motion for an order compelling a psychiatric examination of the complaining witness and his motion to admit evidence of previous sexual conduct of the complaining witness and by admitting purported evidence of prior sexual conduct between the complaining witness and Lavery. We reverse and remand for new trial.

K.R., a nine-year-old girl at the time, lived in the same neighborhood as Lavery. Prior to the summer of 1991, K.R. had a good relationship with Lavery's family. K.R. and Lavery's daughter, A.L., were close and played together on a regular basis. On a Memorial Day trip to the Lake of the Ozarks, Lavery came into K.R. and A.L.'s room and laid down between the girls. Lavery stuck his hand under the covers, pulled down K.R.'s panties, and touched her vagina. K.R. testified Lavery rubbed her vagina in circles for approximately two to five minutes. K.R. further testified she wanted to "scream and stuff" so Lavery would stop it, but she was too scared. Lavery told K.R. to keep the incident a secret.

After the Lake of the Ozarks incident, K.R. continued to see A.L. K.R. wanted to see A.L. and did not think Lavery would do anything like that to her anymore. However, another incident occurred between K.R. and Lavery in early July, which is the basis for this case. A.L. invited K.R. to spend the night at her house. A.L., Lavery, Lavery's wife Patty, and K.R. watched movies. During the second movie, A.L. got up and went to bed. K.R. stayed in the living room and watched the rest of the second

movie with Lavery and Patty. When the movie was over, K.R. went into A.L.'s room to get her nightgown and then went into the bathroom to change because A.L.'s room did not have a door. While K.R. was in the bathroom, Patty had gone into her bedroom to watch television.

When K.R. exited the bathroom, Lavery grabbed her by the arm and told her to keep what was about to happen a secret. Lavery pulled her into the bathroom. Once inside the bathroom, Lavery lifted K.R.'s nightgown and pulled down her panties. Lavery rubbed her vagina. Then Lavery laid her on the floor and pulled down his pants and his underwear. Lavery laid down on top of K.R. and rubbed his penis on her vagina. Lavery never penetrated K.R.'s vagina. Lavery then moved up and put his penis in K.R.'s mouth. After two to five minutes, Lavery told K.R. to keep what happened a secret and not to tell anyone. K.R. then went back into A.L.'s room and tried to go to sleep. She did not try to leave because the door was locked and A.L. had told K.R. the door was hard to unlock.

Several days later while playing with A.L. and a friend, M.K., at the Laverys' house, K.R. told A.L. and M.K. what Lavery had done. M.K. talked A.L. into telling Patty what Lavery had done to K.R. After A.L. went into the house to talk with her mother, Patty came outside, started to cry, and told K.R. to go back to her house. Lavery then walked out of the house, and K.R. could tell that he was mad. K.R. and M.K. started back to K.R.'s house. As they were walking, Lavery came down the street and told K.R., "[H]oney, it's just between you and me." Lavery then stated he needed to talk to K.R.

The girls ran into M.K.'s house screaming. M.K.'s mother testified that the girls said a man had been chasing them and that he had touched K.R. in the wrong places. Both girls were frantic, screaming, and crying. M.K.'s mother went outside and met Lavery running in the driveway. M.K. and K.R. had come outside and stood next to her. Lavery said, "Come on, [K.R.], honey. Come with me. We don't need to get anyone else involved." At this point, K.R. was acting scared to death. M.K.'s mother asked Lavery if he had touched K.R. in the way K.R. said he had. Lavery replied, "I was only playing. I didn't mean to hurt anyone." M.K.'s mother told Lavery to leave and that

she was going to call the police. M.K.'s mother did not have a phone, so she took the girls to K.R.'s house to call the police. Lavery showed up at K.R.'s door and was hollering for K.R. to open the door. He eventually left when no one answered.

1. Motion to compel psychiatric examination of K.R.

Lavery argues the court erred by denying his motion to compel K.R. to undergo a psychiatric examination. Lavery recognizes that *State v. Gregg*, 226 Kan. 481, 602 P.2d 85 (1979), is the benchmark case by which this court must review the actions of the trial court. However, he contends that, by disallowing an independent psychiatric examination of K.R., the trial court formed a conclusion of law. Consequently, Lavery argues that this court's review is unlimited. Lavery's framing of the standard of review is erroneous.

In *Gregg*, the trial court denied the defendant's motion for psychiatric examination of the complaining witness in a sex crime case. 226 Kan. at 487. The court in *Gregg* stated: "The question then becomes whether the trial court abused its discretion in the denial of the motion." 226 Kan. at 489. Also, it was stated in *State v. Blackmore*, 15 Kan. App. 2d 539, 541, 811 P.2d 54, *aff'd in part, rev'd in part* 249 Kan. 668, 822 P.2d 49 (1991), that "[t]he granting or denial of a psychiatric examination of the complaining witness in a sex crime is within the discretion of the trial court." It is well settled that the standard of review when a trial court denies a motion to compel a psychiatric exam in a sex crime case is abuse of discretion.

"Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Wagner*, 248 Kan. 240, 242, 807 P.2d 139 (1991).

Lavery's motion contended that K.R. had been inappropriately exposed to sex and that she was using that knowledge to falsely accuse him. He presented evidence that K.R. was unsupervised most of the summer, used foul language, was possibly sexually molested by Ronnie Forth, another individual in the neighborhood, and had told a false story about killers in the school basement to two neighborhood girls. The court also noted there was

an episode of K.R. "playing doctor" with other neighborhood children.

In making its decision, the court reviewed all the testimony presented and found there was no evidence presented which would tend to indicate that K.R. was using any knowledge of sexual activity she may have gained through sexual conduct with Forth to fabricate an allegation against Lavery. The court stated the lack of supervision and use of vulgar language did not indicate any kind of mental aberration, flight of fancy, or a lack of truth or veracity. The court concluded that, taken individually or viewed as a whole, the evidence presented did not reach the "compelling reason" standard set out in *Gregg*. See 226 Kan. at 489.

In *Gregg*, the question of whether a trial court could order a psychiatric examination of the complaining witness was one of first impression. 226 Kan. at 485. The court discussed the various ways other jurisdictions have determined the issue and then adopted the "middle ground" approach. 226 Kan. at 489. The court held that "a trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination." 226 Kan. at 489. The court concluded: "No facts were stated or evidence introduced as to the child's mental instability, lack of veracity, similar charges against other men proven to be false, or any other reason why this particular child should be required to submit to such an examination." 226 Kan. at 490.

In the instant case, there was no evidence indicating K.R.'s contact with Forth affected her mental stability or veracity. There was no evidence of similar charges by K.R. against other men proven to be false. There was one instance of K.R.'s telling a falsehood. However, the falsehood did not involve the subject matter of this case. Based on the compelling reason standard Lavery had to meet, the trial court's denial of his motion cannot be said to be an abuse of discretion.

Lavery also claims it was unfair for the trial court to allow the State to present the testimony of Barbara Charde while denying Lavery's motion to compel a psychiatric examination. At the trial, Charde, a mental health professional, testified on behalf of the State. Charde, who specializes in child abuse cases, testified that

delayed reporting as occurred in the instant case was not uncommon. She further testified that, through the course of 18 counseling sessions she had with K.R., they had discussed K.R.'s desire to adopt A.L. As of the date of Charde's testimony, K.R. had abandoned the notion of adopting A.L.

Lavery states in his brief that the State did not proffer Charde's testimony prior to trial. However, the State told the court it intended to call Charde. The State informed the court that, although Charde had not performed a battery of psychiatric tests on K.R., Charde could provide answers with regard to K.R.'s mental state. Therefore, Lavery was on notice concerning Charde's testimony.

In *State v. Reser*, 244 Kan. 306, 767 P.2d 1277 (1989), the court held that expert testimony concerning whether the victim showed symptoms consistent with a child who had been sexually abused was admissible evidence. The expert testified only as to traits and patterns common to victims of child sexual abuse and that the victim exhibited some of these traits. The court found no error. 244 Kan. at 309.

Charde testified it is common for children who have been sexually abused to delay reporting the incident. Charde further testified, "In my experience I find that unusual in the fact of how quickly [K.R.] reported, that most of the children I see, the amount of time is longer in reporting." There was no testimony by Charde that would lead to a conclusion that K.R. needed a psychiatric exam. Lavery cross-examined Charde concerning studies Charde had relied on in forming her opinions and about K.R.'s statement that K.R. wanted to adopt A.L.

Charde did not testify concerning K.R.'s mental stability or veracity. Lavery had notice prior to trial that Charde would testify and had an opportunity to cross-examine Charde; therefore, it was not an abuse of discretion to deny Lavery's motion to compel a psychiatric examination of K.R.

2. Previous sexual conduct of K.R.

At a hearing on the motion for a psychiatric examination, Lavery presented evidence alleging K.R. had been molested by Forth. Evelyn Davis, a neighbor of the Laverys, testified that she observed K.R. and Forth together. On these occasions, Davis

saw K.R. hugging Forth tightly while riding on his bike and sitting with her legs wrapped around Forth. Davis observed K.R. and Forth going in and out of the house when no one was home. On cross-examination, Davis testified she thought the touching was of a sexual nature. Although she knew that this type of touching between a 23-year-old and a 9-year-old was unlawful, she did not contact the police or K.R.'s family.

Brenda Cupp, who is "real good friends with the Laverys," also testified about conduct she witnessed between Forth and K.R. Cupp observed K.R. sitting on Forth's lap, and he had his hand up her dress. It appeared to her that Forth was fondling K.R. Cupp was across the street when she saw the activity between K.R. and Forth. She also stated she saw Forth spin K.R. around, causing her dress to fly up. In response to defense counsel's question, Cupp stated she saw Forth's hand go up her dress and touch K.R.'s vaginal area; at the time this occurred, Cupp could not tell whether K.R. was wearing any panties. Despite all Cupp had observed, she did not contact the police or K.R.'s family.

Timothy Boyd testified that he happened upon K.R. trying to coerce his youngest daughter into playing with his three-year-old son's penis. Boyd also stated he heard K.R. using vulgar language and describing how babies are made. Boyd further testified that K.R. had scared his daughters by telling them about a killer that lived in the basement of their school. Boyd also saw Forth and K.R. together and, on one occasion, Forth had his hand up K.R.'s skirt. On cross-examination, Boyd admitted he never called the police concerning Forth and K.R. Boyd also stated that he had a conversation with Lavery about Forth after K.R. made her allegations against Lavery. Brent Upton, who lives down the street from K.R., testified that K.R. stated her parents were going to adopt A.L. if she won the case against Lavery.

Lavery argues that the Forth evidence was highly probative because it explained an alternate source of K.R.'s sexual knowledge other than her contact with Lavery. In denying Lavery's motion, the court held that, by passing K.S.A. 1992 Supp. 21-3525, the legislature indicated, generally, the sexual conduct of the victim is not relevant. The court further stated that K.S.A. 1992 Supp. 21-3525, commonly referred to as the rape shield

statute, is designed to preserve the privacy of the victim and to encourage persons to report crimes and to testify.

Once again, Lavery erroneously argues this court's scope of review is unlimited. In *State v. Bressman*, 236 Kan. 296, Syl. ¶ 1, 689 P.2d 901 (1984), the court held:

"The rape shield statute (K.S.A. 1983 Supp. 21-3525) allows evidence of an alleged rape victim's prior sexual conduct, if it is proved relevant to any fact at issue, such as the identity of the rapist, the consent of the victim, and whether or not the defendant actually had intercourse with her. Decisions regarding the relevancy of evidence rest within the sound discretion of the trial court, which should not be set aside absent a showing of abuse of discretion."

The standard of review is abuse of discretion.

The Kansas rape shield statute is applicable to cases involving aggravated criminal sodomy. K.S.A. 1992 Supp. 21-3525(1)(d). The statute states that no reference may be made to evidence of the complaining witness' previous sexual conduct with any person, including the defendant, unless, after an in camera hearing, the court finds the evidence is relevant. K.S.A. 1992 Supp. 21-3525(2).

Courts deciding whether evidence concerning the prior sexual experiences of a child complaining witness is admissible when offered to prove that the alleged victim in a sex offense case was able to describe sexual activity as a result of an experience other than the alleged offense have announced a number of rules on admissibility. Annot., 83 A.L.R.4th 685, 692. The admissibility of such evidence must be based upon a determination of its probative value, balanced against evidentiary considerations such as the danger of prejudice or confusion of the issues. 83 A.L.R.4th at 691. Some courts have addressed the admissibility of the prior sexual conduct evidence by determining its relevance in general, its similarity to the alleged sexual offense, the availability of alternative sources showing the child had a previous ability to describe sexual activity, and how advanced the child's sexual knowledge was for his/her age. 83 A.L.R.4th 692-93.

Lavery urges this court to adopt the reasoning in *Summitt v. State*, 101 Nev. 159, 697 P.2d 1374 (1985), and *State v. Howard*, 121 N.H. 53, 426 A.2d 457 (1981). In *Summitt*, the defendant was convicted of sexual assault involving acts of cunnilingus and

fellatio. 101 Nev. at 160. At trial, the defendant sought to introduce evidence of a prior sexual experience of the complaining witness to show the young victim had prior independent knowledge of acts similar to those which constituted the basis for the present charge. 101 Nev. at 160. The prior sexual experience of the victim included acts of fondling, fellatio, and intercourse. The trial court did not admit the evidence. 101 Nev. at 160. The Nevada Supreme Court held that, despite the rape shield statute, the trial court must undertake to balance the probative value of the evidence against its prejudicial effect. 101 Nev. at 163. Relying on the decision in *Howard*, the court concluded a defendant should be given an opportunity to prove, by specific instances of the complaining witness' sexual conduct, that she had the knowledge and ability to contrive a false charge against him. 101 Nev. at 164.

In *Howard*, the defendant was charged with statutory rape for having sexual relations with a girl under the age of 13. 121 N.H. at 55. The defendant wished to have admitted that the complaining witness had sexual intercourse with several men, including her father and grandfather. 121 N.H. at 55. At the time of this case, New Hampshire's rape shield statute prohibited evidence of consensual sexual activity between the victim and any person other than the defendant. 121 N.H. at 57. The court held that a defendant must be given an opportunity to demonstrate that the evidence is more probative in value than prejudicial to the complaining witness. 121 N.H. at 58-59.

Lavery also cites *State v. Carver*, 37 Wash. App. 122, 678 P.2d 842 (1984), in support of his contention that the probative value must be weighed against the prejudicial effect in determining admissibility of the complaining witness' previous sexual conduct. In *Carver*, the defendant was charged with one count of indecent liberties with one stepdaughter and one count of statutory rape with his other stepdaughter. 37 Wash. App. at 123. Prior to trial, the defendant tried to introduce evidence that his stepdaughters had been previously sexually abused in a similar manner. 37 Wash. App. at 123. Defendant argued the evidence was necessary to rebut the inference that the only way the two complainants would have knowledge of sexual matters was because the defendant had abused them. 37 Wash. App. at 123.

The trial court found the evidence inadmissible under the rape shield statute. 37 Wash. App. at 123-24. The appellate court held the evidence proffered by defendant did not fit within the concepts and purposes of the rape shield statute because the evidence was prior sexual abuse, not sexual misconduct. The court then determined the evidence was highly relevant to rebut the inference that the complaining witnesses were knowledgable about sexual matters because the defendant had abused them. 37 Wash. App. at 124-25. Based upon the holdings in the above cases, Lavery argues the court erred by excluding the evidence of K.R.'s contact with Forth.

The State urges this court to uphold the approach taken by the trial court, that is, admitting evidence of prior sexual conduct only when it is reliable and there is a degree of commonality or similarity between the prior act and the act alleged.

The court in *State v. Oliver*, 158 Ariz. 22, 760 P.2d 1071 (1988), recognized that the similarities between an alleged sexual offense and the prior sexual experience of the victim will affect the decision to admit evidence of the prior sexual experience when offered for the purpose of establishing an alternative source for the child's ability to describe the sexual activity referred to in the criminal case. The Arizona court adopted a two-prong test to determine whether a child's previous sexual history was admissible. 158 Ariz. at 28. First, the defendant must show, in camera, that the victim previously had been exposed to a sexual act. Additionally, the defendant must establish that the prior sexual act was sufficiently similar to the sexual act charged to give the victim the experience and ability to contrive or imagine the act charged. The court further held that, if the defendant's offer of proof does not establish either that a complaining witness had prior sexual experience, or that this prior sexual experience provided the victim with the ability to fabricate in the present case, then the trial court should exclude the evidence as more prejudicial than probative. 158 Ariz. at 28-29.

In *People v. Warren*, 162 Ill. App. 3d 430, 435, 515 N.E.2d 467 (1987), the court stated:

"Defendant relies on several decisions from foreign jurisdictions in which courts have held that the proscriptions of their rape shield statutes must fall where a showing is made by defendant that the youthful victim's prior

sexual knowledge or conduct is relevant and its probative value outweighs its prejudicial effect. [Citations omitted.] We have reviewed these cases and others in which the admissibility of evidence of a victim's prior sexual conduct was at issue and find that they do not support defendant's position in this appeal. In each case in which the courts ruled that inquiry into the victim's sexual history may be warranted, the defendant had made some preliminary showing that the victim's prior experience was similar to the sexual conduct for which defendant had been tried."

In the instant case, the court stated that, if the Forth evidence was relevant and would be of probative value to the trier of fact, it would be admitted, notwithstanding the public policy of the rape shield statute. The court further stated that, if the evidence of K.R.'s contact with Forth had been of "fellatio, attempted fellatio, intercourse, attempted intercourse, [or] anything of that nature" it would be admitted. The balancing of the probative value against the prejudicial effect of the Forth evidence is invited by K.S.A. 1992 Supp. 21-3525(2).

The only similarity between the Forth evidence and Lavery's actions was that they both had allegedly put their hands down K.R.'s pants. Lavery was convicted of aggravated sodomy. There was no evidence proffered that Forth had sodomized K.R. The Forth evidence was not relevant to the case at hand. Relevant evidence is defined as "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). The fact Forth allegedly put his hand in K.R.'s pants does not tend to prove whether or not she was sodomized by Lavery.

Furthermore, the court admitted evidence that K.R. had access to pornographic material. The material contained graphic depictions of the kind of sex acts with which Lavery is charged. Consequently, the jury could not draw the inference that the only source of K.R.'s sexual knowledge was her contact with Lavery.

In all the cases cited by Lavery in support of his contention, the complaining witness' previous sexual conduct was similar to the acts with which the defendant was charged. It cannot be said that the trial court abused its discretion in disallowing evidence of K.R.'s previous sexual experience because it was not sufficiently similar to the acts charged.

3. The Ozarks incident.

Once again, Lavery erroneously states that this court's scope of review is unlimited. However, "[t]he admission of evidence lies within the sound discretion of the trial court subject to the exclusionary rules." *State v. Carmichael,* 240 Kan. 149, 157, 727 P.2d 918 (1986). Therefore, the standard of review is abuse of discretion.

Lavery argues the trial court erred by admitting evidence of his prior sexual touching of K.R. that occurred at the Lake of the Ozarks. Lavery argues that to admit the State's prior acts evidence while rejecting his evidence of Forth's alleged molestation of K.R. as an alternative source for her sexual knowledge was unfair.

The court found the Lake of the Ozarks incident evidence admissible pursuant to *State v. Crossman,* 229 Kan. 384, 624 P.2d 461 (1981). We disagree. The trial court stated that *Crossman* was very clear and the State was entitled to present the evidence of the Ozarks incident if it established the course of conduct and the relationship between the parties.

In *Crossman,* the court stated:

"We conclude that in cases of crimes involving illicit sexual relations or acts between an adult and a child, evidence of prior acts of similar nature between the same parties is admissible independent of K.S.A. 60-455 where the evidence is not offered for the purpose of proving distinct offenses, but rather to establish the relationship of the parties, the existence of a continuing course of conduct between the parties, or to corroborate the testimony of the complaining witness as to the act charged." 229 Kan. at 387.

The complaining witness in *Crossman* testified to the complex family relationships between herself, her mother, her siblings, and her stepfather. The sexual relationship between the complaining witness and defendant extended over several years.

To the contrary, in the present case, the Lake of the Ozarks incident is the only evidence of other sexual contact between Lavery and K.R. prior to the contact in this case. The one prior incident at the Lake of the Ozarks is neither sufficient to establish a relationship between K.R. and Lavery nor to prove a continuing course of conduct between the victim and the defendant.

The trial court erred in admitting evidence of the Lake of the Ozarks incident as establishing a course of conduct between La-

very and K.R. Based upon the holding in *Crossman*, the trial court abused its discretion by admitting evidence of the Lake of the Ozarks incident.

Reversed and remanded for a new trial.