(15 P.3d 835)
No. 82,060

STATE OF KANSAS, *Appellee*, v. CHARLES P. BOURASSA, *Appellant*.

Opinion filed December 30, 1999.

*Cory Riddle* and *Elizabeth Seale Cateforis*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Charles R. Reimer*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before PIERRON, P.J., KNUDSON, J.,and WAHL, S.J.

KNUDSON, J.: This is a direct appeal by Charles Bourassa after jury trial convictions for the rape and kidnapping of V.R. and the kidnapping of L.R. Bourassa contends the district court erred in denying his pretrial requests for production of V.R.'s mental health records, a mental evaluation of V.R., and permission to introduce evidence of V.R.'s previous sexual history. Bourassa also contends the district court erred in its failure to instruct the jury on the crimes of criminal restraint and aggravated indecent solicitation as lesser included offenses of kidnapping.

We conclude denial of Bourassa's pretrial motions for V.R.'s evaluation and use of her sexual history constituted an abuse of judicial discretion and denied him access to evidence fundamental to his theory of defense. We reverse Bourassa's convictions and remand this case to the district court for retrial.

## General Facts

During the late morning of March 28, 1998, sisters V.R., age 11, and L.R., age 9, were in a Wichita city park located about one-half mile from their home. While it is far from clear exactly how it happened, we know from the evidence that the two children got in 63-year-old Charles Bourassa's van and went with him on approximately a 20-mile trip, during which they stopped at local fishing lakes, a liquor store, another park by Bourassa's home in Valley Center, and a Dairy Queen. Eventually, L.R. got out of the van and went home. V.R. stayed with Bourassa until late afternoon when he dropped her off at a Dollar Store. From there, V.R. went to a nearby self-service laundry and several hours later at approximately 8:20 p.m. called the police for help. V.R. was not aware her family had earlier notified the authorities she was a runaway. Wichita Police Officer Salcido went to the laundry and immediately recognized V.R. from a previous encounter with her. Salcido took V.R. to the Sedgwick County juvenile intake and assessment cen-

ter. When interviewed, V.R. indicated she had been molested, and the investigation was turned over to Detective Swanson. A subsequent sexual assault examination at a local hospital disclosed injuries consistent with trauma or force to V.R.'s vagina and anal area. Further investigation quickly identified Bourassa as the perpetrator; he was arrested and charged with rape and kidnapping. Upon conviction, Bourassa was sentenced to a total term of 341 months' confinement.

### Request For V.R.'s Mental Evaluation and Mental Health Records

Bourassa contends that the district court erred in denying his motion for a mental evaluation of V.R. and production of her mental health records.

At the hearing on this motion, Bourassa's trial counsel explained to the district court that V.R. had been under psychological care at Prairie View in Newton, Kansas, and had accused her father of sexually molesting her. The judge was also told that V.R. had reportedly mutilated two kittens and had a tendency to soil herself. Counsel then stated:

"[T]he Court does not have the transcript of the preliminary hearing before it. One has been requested and ordered, but it has not yet been prepared by the court reporter. It was a preliminary hearing held in front of Judge Dewey that the victim of the rape, [V.R.], testified that the rape took place in the front seat of the van with her sister being in between herself and Charles Bourassa. The younger sister did not testify that she saw any sexual contact between Charles Bourassa and her older sister. Thank you."

It is unfortunate a transcript of V.R.'s testimony at the preliminary hearing was not available at the time the motion was heard. A reading of the transcript discloses other incongruous statements made by V.R. that supported Bourassa's requests.

In its response to Bourassa's argument, the State without elaboration acknowledged V.R. was taking Prozac and does have behavior disorders.

District Judge Rebecca Pilshaw, in denying Bourassa's motion, stated:

"I'm overruling the motion based on the fact that this is a direct evidence case, that there is corroborating evidence in addition to that. This is not one of those 'he said/she said' type of things; it's whether all of the witnesses will be believed by the jurors. Probably the closest you come in your argument is the—your theory, I'm going to call it, that perhaps there have been false allegations made in the past; but by no means does the fact that no charges were ever filed mean that these were false allegations, especially if these are things that are just now coming to light through the course of therapy that the girl is currently in.

"It is obtrusive. It does diminish the confidentiality and the confidence that someone who needs—desperately needs the help of a psychologist desires, and therefore I find that there should be compelling reasons and that those—the reasons stated are not compelling to the degree rendering disclosure of the records or an independent psychological evaluation to be warranted."

## Mental Evaluation

The standard of review when a district court denies a motion to compel a psychiatric examination in a sex crime case is abuse of discretion. *State v. Lavery*, 19 Kan. App. 2d 673, 676, 877 P.2d 443, *rev. denied* 253 Kan. 862 (1993). "Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court." *State v. Davidson*, 264 Kan. 44, 56, 954 P.2d 702 (1998).

In the following reported cases, the decision of the district court not to allow a psychiatric examination was upheld. There are no published cases where an appellate court has found an abuse of discretion.

In *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979), the Supreme Court established the "middle ground" approach to deciding whether the district court should have ordered a psychiatric examination of the complaining witness: "[A] trial judge has the discretion to order a psychiatric examination of the complaining witness in a sex crime case if the defendant presents a compelling reason for such examination."

In *Gregg*, the defendant was convicted of aggravated sodomy and aggravated indecent solicitation of a child. Defendant filed a pretrial motion requesting that the victim be given a psychiatric evaluation. The defendant based his request on factors such as the victim's age, the seriousness of the crime, and the lack of corrob-

orating evidence. The Supreme Court noted that defense counsel presented no evidence of the child's mental instability, lack of veracity, or similar charges against other men proven to be false. The court equated the motion to a fishing expedition "in the hope something damaging and admissible in the trial would be unearthed." 226 Kan. at 490. The court concluded that no compelling reason for ordering the mental evaluation was given, and the district court did not abuse its discretion. 226 Kan. at 490.

In *State v. Lavery*, 19 Kan. App. 2d 673, 877 P.2d 443 (1993), the defendant was convicted of aggravated criminal sodomy. The district court denied his request for a psychiatric examination of the complaining witness. Lavery contended that the victim, K.R., had been inappropriately exposed to sex and that she was using the knowledge to falsely accuse him. He presented evidence that K.R. used foul language, was possibly molested by another man in the neighborhood, and had told a false story about killers in the school basement to two neighborhood girls. The district court also noted that there was an incident where K.R. was "playing doctor" with other children. 19 Kan. App. 2d at 676-77.

The district court concluded that there was no evidence that would tend to indicate that K.R. was using any knowledge of sexual activity gained through conduct with Forth to fabricate an allegation against Lavery. It also found that foul language or lack of supervision did not indicate any kind of mental aberration, flight of fancy, or lack of veracity. It found that the evidence presented did not reach the "compelling reason" standard. On appeal, this court affirmed the district court's decision. 19 Kan. App. 2d at 677.

In *State v. Blackmore*, 15 Kan. App. 2d 539, 540, 811 P.2d 54, *aff'd in part and rev'd in part* 249 Kan. 668, 822 P.2d 49 (1991), the defendant was convicted of indecent liberties with a child. Blackmore requested a psychiatric examination of Jacob, the complaining witness. The district court denied the motion.

Jacob's grandmother had taken him to a mental health center for treatment of behavior problems. His problematic behavior included hyperactivity, sleeplessness, bowel movements in his pants,

and gagging himself at night until he vomited. On appeal, this court found that the district court did not abuse its discretion. It found that there was no evidence that Jacob had made similar charges against other men that were proven to be false. It also concluded that there was no evidence that he was mentally unstable. Finally, this court stated that although Jacob took medication for earaches and asthma, there was no showing that the medication affected his veracity or mental stability. 15 Kan. App. 2d at 542.

We believe all of the above cases are distinguishable from the case now before us. Bourassa's lawyer did proffer evidence of V.R.'s mental instability and that she had made a recent charge of her father sexually molesting her. The motions judge was told V.R. had mutilated two kittens the previous summer and she had a tendency to soil herself. The State acknowledged V.R. was taking the drug Prozac and currently undergoing mental health counseling for behavioral disorders. Bourassa's attorney also brought to the district court's attention that V.R. had testified at the preliminary hearing that the rape occurred in the van, notwithstanding that her sister did not testify as to anything improper happening in the van.

The motions judge denied Bourassa's motion for two reasons. First, according to the judge, this is not a "he said/she said" case. Second, the fact no charges were ever filed against V.R.'s father does not mean she made a false allegation against him.

We do not believe the reasons stated by the motions judge are sufficient to deny Bourassa's motion. We return to *Gregg* for the sine qua non necessary to support a denial for an evaluation: "No facts were stated or evidence introduced as to the child's mental instability, lack of veracity, similar charges against other men proven to be false, or any other reason why this particular child should be required to submit to such an examination." 226 Kan. at 490.

Bourassa did provide facts as to V.R.'s instability, possible lack of veracity, and other reasons that supported the motion. The motion was neither a fishing expedition by the defendant nor a tactic intended to harass or intimidate V.R. We conclude Bourassa did

present compelling reasons for V.R. to be evaluated, and the district court abused its discretion in denying his motion.

## Mental Health Records

Bourassa also contends that the district court erred in denying his request for the production of V.R.'s mental health records generated as a result of her counseling and treatment at Prairie View.

A similar situation arose in *In re J.T.M.*, 22 Kan. App. 2d 673, 922 P.2d 1103, *rev. denied* 260 Kan. 993 (1996). The defendant was adjudicated as a juvenile offender for aggravated battery. The district court denied his request for discovery of all of the victim's medical records for purposes of cross-examination of the victim.

On appeal, this court reasoned that the alleged victim was not a party to the action and that the district court, therefore, had no jurisdiction to compel discovery other than as provided in the Code of Civil Procedure. This court said that if the defendant wanted to discover documents in the victim's custody, he should have issued a subpoena duces tecum under K.S.A. 60-245(b). It noted that the defendant did not allege that the medical records were ever in the custody or control of the prosecution, so the district court lacked the jurisdiction to compel the State to obtain the documents from the victim. Also, there was no evidence that the defendant tried to subpoena the documents. Thus, the court found that the district court did not err. 22 Kan. App. 2d at 678-79.

Bourassa contends, under K.S.A. 22-3212, the State should have been required to produce V.R.'s mental health records. We do not agree. V.R.'s records were not shown to be in the State's possession and were not records made in connection with this case. Further, the State argued that information in V.R.'s past psychological records would be privileged under K.S.A. 65-5602(a). As the court suggested in *In re J.T.M.*, Bourassa's trial attorney should have issued a subpoena duces tecum to the mental health provider to properly initiate an effort to obtain the records. Bourassa has not shown an abuse of judicial discretion by the motions judge in denying the request for production of V.R.'s mental health records.

## Motion To Admit K.S.A. 21-3525 Evidence

This motion was considered before yet another district judge, Warren M. Wilbert. In a supportive affidavit, Bourassa alleged

there were police reports indicating V.R. had previously accused her father of sexually assaulting her. Because V.R. had been with her father on the morning of March 28, 1998, the defendant wanted to present evidence of the prior accusations made by V.R. against her father to make credible the defendant's theory of defense—that V.R.'s father could have molested her that morning.

In overruling the motion, Judge Wilbert stated:

"I don't think it is relevant and material. I'll overrule both on the merits that it's not relevant and material and pursuant to the statute that it wasn't filed in a timely fashion. I didn't want to get technical just on the timing, but I think I'll just throw it in. But I'm not going to find that it's relevant and material given the allegations of this case and how it was brought to the attention of law enforcement."

We note K.S.A. 21-3525 provides that a motion must be made at least 7 days before the commencement of trial unless waived by the court. Bourassa's motion was filed and considered at least 9 days before the trial. Judge Wilbert erred in concluding Bourassa's motion was not timely made.

The admission or exclusion of evidence under the rape shield statute is within the judicial discretion of the district court. See *Lavery*, 19 Kan. App. 2d at 680.

As we previously noted, Bourassa's trial attorney filed a supporting affidavit that V.R. had "been sexually assaulted by her father prior to the allegations in the current case." At oral argument, the motion's judge was also informed that V.R. was with her father on the morning of March 28, 1998, before going to the park, and it was the defendant's theory of defense that her father could have molested her again.

The conclusion of the motion's judge that the testimony sought by Bourassa would not be relevant is difficult to understand. The evidence sought by Bourassa was highly relevant. The district court's ruling substantially prevented Bourassa from pursuing his theory of defense that appears to have been based upon V.R.'s own allegations of past sexual abuse at the hands of her father and credible evidence she had been in his custody before going to the park. We conclude the motions judge abused his discretion. Upon remand, further hearing should be held to determine "what evidence

may be introduced by the defendant and the nature of the questions to be permitted." K.S.A. 21-3525(b).

## Due Process Considerations

On appeal, Bourassa additionally argues the cumulative effect of the pretrial rulings prevented a rational presentation of his theory of defense—that, if V.R. was sexually molested, someone other than Bourassa was responsible. Essential to this defense was the need to show someone else had the opportunity to commit the crime and there were plausible reasons why V.R.'s testimony should not be found credible.

Fundamental due process requires that a defendant in a criminal proceeding be allowed to present his or her theory of defense to the jury. A district court's exclusion of evidence that is an integral part of the defendant's theory of defense violates due process of law. *State v. Bradley*, 223 Kan. 710, Syl. ¶ 2, 576 P.2d 647 (1978).

Bourassa did not make this constitutional argument before the district court. Ordinarily, even a constitutional ground for reversal must first be presented to the district court if it is to be considered on appeal. *State v. Shears*, 260 Kan. 823, 837, 925 P.2d 1136 (1996). However, a recognized exception is when "questions are raised for the first time on appeal [and] consideration of the same is necessary to serve the ends of justice or to prevent denial of fundamental rights." *State v. Mincey*, 265 Kan. 257, 267, 963 P.2d 403 (1998). Whether we should consider this issue requires us to consider the totality of circumstances and whether at the end of the day we can say with reasonable certainty Bourassa received a fair trial.

## a. Trial Testimony

<u>V.R.</u>

V.R.'s direct testimony was similar to that given at the preliminary hearing but on cross-examination the following exchanges took place:

"Q. . . . [D]o you see the man seated next to the prosecutor in the suit, Detective Swanson?

"A. Yes.

"Q. You ever talk to him before about this case?

"A. Yeah.

"Q. Do you recall telling him that Mr. Bourassa and you had sex on the merry-go-round?

"A. Yeah.

"Q. Was that correct?

"A. Yeah.

"Q. Tell me about that. When did that happen?

"A. In the evening.

"Q. That night?

"A. Yes.

"Q. About what time that night?

"A. 5:00 or 6:00.

. . . .

"Q. How was it that's what happened, because you're telling me that you went to the Dollar Store and then the Laundromat. Did he pick you up later and have sex with you again in the park?

"A. Yes.

"Q. Where did he pick you up from, this second time? Were you at your house?

"A. No.

"Q. Where were you?

"A. With my boyfriend.

"Q. Where was that address?

"A. By his house.

. . . .

"Q. How old is your boyfriend?

"A. Nine.

"Q. You're telling me that Mr. Bourassa picked you up that night in his van?

"A. Yes.

"Q. How did that happen? Did he come to the door?

"A. Yes.

"Q. He knocked on the door?

"A. Yeah.

"Q. Who answered the door?

"A. My boyfriend.

"Q. Were any parents there?

"A. Yes.

"Q. What did they say?

"A. Do not open the door, you get strangers here.

"Q. But Mr. Bourassa was at the door?

"A. Yes.

. . . .

"Q. You left with him?

"A. Yes.

"Q. This would have been six o'clock that same evening. It would have been that same evening?

"A. Yes.

"Q. So, if I'm correct, then you leave the Laundromat after calling 911 at the Laundromat, you go to your boyfriend's house?

"A. Yeah.

"Q. And Mr. Bourassa picks you up later after the sun's gone down?

"A. Yeah.

"Q. At that point you have sex on the merry-go-round?

"A. Yes.

. . . .

"Q. How did you get back home?

"A. Walking.

"Q. So, after the two of you have sex on the merry-go-round you walk back home?

"A. Yes.

"Q. Did [sic] you also recall being in court a few months later?

"A. No.

"Q. Do you remember seeing me there, though?

"A. Yes.

"Q. Do you remember telling the Judge what happened to you?

"A. Yes.

"Q. Do you remember telling the Judge that Mr. Bourassa and yourself had sex in the front seat of the van with your sister in the middle?

"A. Yeah."

## Detective Swanson

When interviewed, V.R. told Detective Swanson that she went to Prairie View School in Newton. Swanson testified that the school is designed for children with behavior disorder and mentally retarded children. He also talked to her about what happened during the time she was with Bourassa. When V.R. testified, she told the jury Bourassa raped her a second time when he came back and picked her up that evening at a friend's house and they returned to the park where he had sex with her on the merry-go-round. Swanson acknowledged V.R.'s testimony that this second rape occurred was impossible.

The State's theory was that Bourassa raped V.R. after L.R. had left. Moreover, both V.R. and L.R. were consistent in their testimony that L.R. sat in the middle of the bench seat of Bourassa's van the entire time both girls were in the van. At preliminary examination, V.R. testified that Bourassa raped her in the front seat

of the van while her sister was present. L.R. testified that nothing improper happened while she was present. Swanson acknowledged that this version of what had occurred given by V.R. was not consistent with what she had told him had happened.

V.R. told the nurses at the hospital that Bourassa took her into his house in Valley Center. Swanson testified when he questioned V.R. at one point she would tell him that happened, and then tell him it did not happen.

Swanson also testified that V.R. had told him about meeting some friends at a house after Bourassa had let her out at the Dollar Store. Swanson stated:

"I believe that she said she went to a young boy named Jose's house [sic], but she didn't know his name or where he lived. She mentioned another friend, I believe the name was Paul, didn't know too much about him. She was very, very tired and very scattered. That's why the [second] interview was so short."

### Forensic Evidence

A crime scene investigator went to Bourassa's apartment and made a thorough investigation that did not reveal any crime had occurred upon the premises. The investigator did not locate or identify any trace evidence putting V.R. in the apartment.

Shannon Steger, DNA lab manager at the Sedgwick County Regional Forensic Science Center, analyzed the evidence collected from the sexual assault collection kit—swabs, blood, hair, and clothing. Additionally, DNA samples were obtained from Bourassa. There were no DNA matches, and the trace evidence did not implicate or exonerate Bourassa. However, V.R. had told investigators that Bourassa had ejaculated on her abdomen. Steger testified there was human DNA on V.R.'s abdomen that did not match either her or Bourassa's DNA. However, the substance was not blood or semen.

Based upon the entire record before us, we believe a mechanistic legal approach of taking a snapshot of each pretrial ruling and assessing its impact under an abuse of discretion standard misses this crucial point—the pretrial orders preventing V.R.'s evaluation and the introduction of evidence of her previous allegations of sexual abuse at the hands of her father destroyed any reasonable possi-

bility Bourassa had to present his theory of defense. Without the benefit of this potentially critical evidence, the jury was left with the accusations of V.R., a mentally challenged 11-year-old, who had been sexually molested, and the denials of Bourassa, a 63-year-old stranger, who picked the children up in a park and took them away in a van. It is no small wonder the jury was not overly concerned with the absence of trace evidence and the unexplained DNA evidence. We conclude Bourassa has been denied fundamental rights afforded under the Due Process Clause of the Fourteenth Amendment and should be granted a new trial.

## Lesser Included Crimes

Bourassa contends that the district court should have instructed the jury regarding criminal restraint and aggravated indecent solicitation, as lesser included offenses to kidnapping and aggravated kidnapping. This contention lacks merit.

The district court has a duty to instruct the jury on lesser included offenses. The duty arises whether or not the instruction was requested. *State v. Sanders*, 258 Kan. 409, 413, 904 P.2d 951 (1995). The determination is to be based on the evidence as a whole. *State v. Bell*, 266 Kan. 896, 915, 975 P.2d 239 (1999). The standard of review is as follows:

" '[A] criminal defendant has a right to an instruction on all lesser included offenses supported by the evidence at trial so long as (1) the evidence, when viewed in the light most favorable to the defendant's theory, would justify a jury verdict in accord with the defendant's theory and (2) the evidence at trial does not exclude a theory of guilt on the lesser offense.' " *State v. Moncla*, 262 Kan. 58, 74, 936 P.2d 727 (1997), quoting *State v. Harris*, 259 Kan. 689, 702, 915 P.2d 758 (1996).

## Criminal Restraint

The district court denied defense counsel's request for an instruction regarding criminal restraint. Although the offense of criminal restraint may be considered a lesser included offense of kidnapping and aggravated kidnapping, it was unnecessary for the district court to give such an instruction under the facts presented in this case. See *State v. Lile*, 237 Kan. 210, 213, 699 P.2d 456 (1985).

In Count II, the State charged Bourassa with kidnapping by deception, in violation of K.S.A. 21-3420(b). For purposes of this case, kidnapping is defined as the "taking or confining of any person, accomplished by . . . deception, with the intent to hold such person . . . to facilitate . . . the commission of any crime." In Count I, Bourassa was charged with aggravated kidnapping by deception, in violation of K.S.A. 21-3421, which defines aggravated kidnapping as "kidnapping, as defined in K.S.A. 21-3420 and amendments thereto, when bodily harm is inflicted upon the person kidnapped." The elements of criminal restraint are found in K.S.A. 21-3424(a): "Criminal restraint is knowingly and without legal authority restraining another person so as to interfere substantially with such person's liberty."

Here, Bourassa does not argue that criminal restraint was a crime necessarily proven under *State v. Fike*, 243 Kan. 365, 757 P.2d 724 (1988). Rather, he argues that under the facts, the jury could have found that there was no kidnapping of L.R. and V.R., only the criminal restraint of the girls. However, the evidence shows two possible versions of what occurred. Bourassa testified he did not take the girls against their will and that he did not touch V.R.'s private parts. His theory of defense was that the girls voluntarily entered his van and voluntarily remained with him. He testified that he never made them do anything that they did not want to do.

The other version presented at trial was that Bourassa took the girls against their will, dropped off L.R., and raped V.R. If the jury believed Bourassa's theory of defense, it necessarily would have believed that he did not restrain, confine, or deceive the girls. It would also have believed that he did not rape V.R. A lesser included instruction need be given only where it is " ' "clearly required by the evidence," ' " and " ' "the jury might naturally and probably have convicted of a lesser degree or offense" ' " if it had been given. *State v. Bell*, 266 Kan. 896, 906, 975 P.2d 239 (1999), quoting *State v. Mason*, 208 Kan. 39, 42, 490 P.2d 418 (1971). Under the evidence presented in this case, Bourassa was either guilty of kidnapping L.R. and V.R., or he was not guilty.

Bourassa also argues that the jury should have been given the opportunity to determine the factual question of whether he had the specific intent required under the kidnapping statutes. However, there was no evidence introduced at trial to raise a factual issue about whether defendant had the capacity to form the requisite specific intent so as to require an instruction on criminal restraint. Under the facts of this case, the district court did not err in failing to instruct the jury on criminal restraint.

## Aggravated Indecent Solicitation

The district court also denied defense counsel's request for an instruction regarding aggravated indecent solicitation. Bourassa argues that the district court should have given such an instruction as a lesser included offense to kidnapping and aggravated kidnapping. The State contends that aggravated indecent solicitation is not a lesser included offense to these crimes. The State's contention has merit.

In *State v. Fike,* the Supreme Court set out the two-part test for determining whether a crime is a lesser included offense of the charged crime. The first step is to determine whether all of the statutory elements of the alleged lesser included crime are among the statutory elements required to prove the crime charged. 243 Kan. at 368. Aggravated indecent solicitation is defined, in pertinent part, as "inviting, persuading or attempting to persuade a child *under the age of 14 years* to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the child." (Emphasis added.) K.S.A. 21-3511(b). Bourassa concedes that the present case does not meet the first prong of the *Fike* test. Aggravated indecent solicitation contains an age element that is not present in the definitions of kidnapping and aggravated kidnapping. See K.S.A. 21-3420, 21-3421, 21-3511(b).

The second prong of the *Fike* test involves analyzing whether the alleged lesser crime would be necessarily proved in proving the crime charged. 243 Kan. at 368. Bourassa argues that aggravated indecent solicitation was necessarily proved in proving kidnapping. First, it must be noted that there was no evidence that Bourassa intended to commit a sexual act upon L.R.; thus, the jury would

not have had a basis for convicting Bourassa of the aggravated indecent solicitation of L.R. The district court did not err in failing to give such a jury instruction with regard to L.R.

With regard to V.R., the State had to prove that Bourassa took or confined her by deception with the intent to hold V.R. to facilitate the crime of rape or aggravated indecent liberties with a child. In this case, in proving the crimes of rape or aggravated indecent liberties, the State had to prove that V.R. was under the age of 14. See K.S.A. 21-3502(a)(2); K.S.A. 21-3506.

Where a defendant is charged with kidnapping by deception, the State must prove that the taking or confinement was the result of the defendant knowingly and willfully making a false statement or representation, expressed or implied. *State v. Holt*, 223 Kan. 34, 41, 574 P.2d 152 (1977). Bourassa erroneously argues that aggravated indecent solicitation also requires a taking. The crime of aggravated indecent solicitation does not involve a taking or confining, but an act of solicitation—inviting, persuading, or attempting to persuade a child to enter a vehicle, building, room, or secluded place. Thus, the State's proving a taking did not necessarily prove a solicitation. Moreover, the State's proving deception did not necessarily prove a solicitation.

Here, the State may have shown that Bourassa gained the girls' trust by giving them burgers and ice cream, but the kidnapping statutes did not require the State to prove an invitation, persuasion, or attempted persuasion. Bourassa has confused what the State may have actually proved in its evidence establishing that a kidnapping occurred with what the State was required to prove to establish the crime charged. The mere fact that the evidence adduced in proving the crime charged may also prove some other crime does not make the other crime a lesser included offense. See *State v. Gibson*, 246 Kan. 298, 300, 787 P.2d 1176 (1990). Aggravated indecent solicitation is not a lesser included offense of kidnapping or aggravated kidnapping. The district court did not err in failing to give such an instruction.

Affirmed in part, reversed in part, and remanded for new trial.