(861 P.2d 847)
No. 68,539

STATE OF KANSAS, *Appellee,* v. STEVEN ASHER, *Appellant.*

—

Opinion filed October 22, 1993.

*Steven R. Zinn,* deputy appellate defender, and *Jessica R. Kunen,* chief appellate defender, for the appellant.

*Charles R. Reimer,* assistant district attorney, *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, for the appellee.

Before LEWIS, P.J., GREEN, J., and DAVID L. THOMPSON, District Judge, assigned.

LEWIS, J.: The defendant appeals from his conviction of possession of cocaine. He argues that the State deprived him of the testimony of a witness on his behalf. We agree and reverse and remand.

The facts which led to the defendant's arrest were testified to by a Wichita police officer. The officer testified that he was called to a night club in Wichita to investigate a tip concerning possible drug activity taking place in the parking lot. While in the parking lot checking out this tip, the officer observed the defendant and Darrell L. Peyton in a parked vehicle. The defendant was in the front seat holding what the officer believed to be a syringe in his hand, and Peyton was rolling up his sleeve. The officer intervened, arrested both men, and seized drugs and paraphernalia

from the vehicle. Both the defendant and Peyton were charged with illegal possession of drugs.

The defendant denied that he had a syringe in his hand. He testified that he had only been in the vehicle with Peyton a very short time and that Peyton told him he was parking the car for a friend. He stated that he was not aware there were drugs in the vehicle until after he was inside the vehicle and that, when he discovered the drugs, he advised Peyton to get rid of them.

During the defendant's trial, he sought to call Peyton as a witness on his behalf. At first, it appeared Peyton was willing to take the stand and testify on behalf of the defendant. However, after some confusion and after having been advised of his rights and conferring with his attorney, Peyton refused to testify, invoking his Fifth Amendment rights.

The defendant presented evidence that Peyton's refusal to testify was motivated by a statement from the prosecuting attorney that there would be no plea bargain for Peyton if he testified on the defendant's behalf.

The defendant's evidence concerning Peyton's refusal to testify was based on an affidavit prepared by Peyton's attorney. According to the affidavit, Deborah Wilkinson, an assistant district attorney, was in charge of the prosecution of Peyton. On one occasion, Peyton's attorney had an opportunity to confer with Gregory Waller, another assistant district attorney. Waller advised Peyton's attorney that normally in a case of this nature, the prosecution, in exchange for a guilty plea, would recommend a minimum sentence and a review of the SRDC report. Waller was quick to advise Peyton's attorney that, while this was the normal practice, he could give no assurances that Deborah Wilkinson would follow this procedure in Peyton's case. Peyton, however, waived his right to a jury trial after being advised of the terms of a possible plea agreement.

All went as expected for Peyton until he was called as a witness for the defendant. His attorney explained to Peyton what his rights were and, with knowledge of those rights, Peyton agreed to take the witness stand on behalf of the defendant. However, shortly before Peyton took the stand, his attorney conferred with Deborah Wilkinson. Wilkinson advised that if Peyton testified in the manner she expected, all plea negotiations would be discon-

tinued and any plea by Peyton would be without the benefit of a plea agreement. The conversation between Peyton's attorney and Wilkinson took place in the presence of Peyton, who, after listening to the conversation, advised his counsel that he would not testify. Peyton, therefore, invoked his Fifth Amendment rights.

Defense counsel then proffered the testimony Peyton was expected to give. Peyton was expected to testify he was parking the car for a friend when he saw the defendant and asked him to get in the car and have a few beers. The defendant got into the car, and the overhead light was turned on. When the light was turned on, the defendant saw, for the first time, that there were drugs in the car, and he told Peyton to get rid of them. Peyton was expected to testify that at no time did the defendant have a syringe in his hand and that the defendant did not know that the car contained drugs and drug paraphernalia until after he had gotten into the vehicle at the request of Peyton.

The defendant also raises issues concerning the admissibility of certain evidence. The factual basis for these issues will be discussed later in the opinion.

## WERE THE DEFENDANT'S SIXTH AMENDMENT RIGHTS VIOLATED?

Under the Sixth Amendment of the United States Constitution, a defendant is afforded the right to call witnesses on his or her behalf and the right to compulsory process. Although this right is found in the Sixth Amendment, the courts have held that the right is so fundamental to a fair trial that it is guaranteed by the Due Process Clause of the Fourteenth Amendment. See *United States v. Terzado-Madruga,* 897 F.2d 1099, 1108 (11th Cir. 1990). The defendant argues that the State violated this fundamental right by depriving him of exculpatory testimony through intimidation.

The issue we must decide is whether the State, by threatening Peyton with denial of a plea agreement if he testified for the defendant, violated the defendant's due process rights. We conclude that the action of the State did violate the defendant's consitutional rights.

We have not found any Kansas cases specifically on point, but there is ample authority from the Supreme Court of the United States and other jurisdictions to support the position we take.

In *Washington v. Texas*, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967), the Supreme Court dealt with a Texas statute which prohibited a defendant from calling a codefendant as a witness. The court concluded that this statute violated the defendant's Sixth Amendment rights: "Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law." 388 U.S. at 19.

The Court went on to say:

"We hold that the petitioner in this case was denied his right to have compulsory process for obtaining witnesses in his favor because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." 388 U.S. at 23.

In *Webb v. Texas*, 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351 (1972), the trial court gave the only defense witness an extensive warning about perjury and implied that it expected the witness to lie and indicated that if the witness did lie, he would have difficulty in being paroled from his own sentence. Upon being so admonished by the trial court, the witness refused to testify. The Supreme Court overturned the defendant's conviction and stated, "The fact that Mills was willing to come to court to testify in the petitioner's behalf, refusing to do so only after the judge's lengthy and intimidating warning, strongly suggests that the judge's comments were the cause of Mills' refusal to testify." 409 U.S. at 97. The Court went on to hold:

"[T]he unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify.

. . . .

". . . [The remarks] effectively drove that witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." 409 U.S. at 98.

As we read these decisions, it is a violation of a defendant's due process rights for the State to take action which deprives the defendant of significant exculpatory or beneficial testimony. It is our judgment that the State did precisely that in the instant matter.

We are compelled to reverse the defendant's conviction. From the record, there appears to be no question but that the State, by its threats, intimidated Peyton to the extent he refused to testify. The State's threats concerning the plea bargain had the same effect on this defendant as did the Texas statute in *Washington v. Texas*. The prosecutor in a criminal action has all of the considerable power and means of the State to use in pursuing a conviction. To use that power to deprive a defendant of exculpatory evidence is simply unacceptable. If the State had failed to disclose the exculpatory evidence which it knew existed, we would most certainly reverse a defendant's conviction. The State's action in the instant matter had the same effect and dictates the same result.

The State does not seriously argue that it did not intimidate the defendant's witness. The State does, however, assert that it had no obligation to plea bargain with Peyton and that it was merely exercising a discretionary right in refusing to do so. In support, the State cites *State v. Ji*, 251 Kan. 3, 11, 832 P.2d 1176 (1992), in which our Supreme Court stated: "[I]n the absence of a statute which requires a prosecutor to plea bargain, whether or not to plea bargain with an individual charged with a crime lies in the discretion of the prosecutor. The prosecutor's refusal to plea bargain with Ji does not require that the case be dismissed." We do not disagree with the rule announced in *Ji*; however, we conclude that *Ji* is not applicable in the instant matter. In *Ji*, the complaining party was the defendant, who was denied the opportunity to plea bargain to which he somehow believed he was entitled. In addition, *Ji* did not involve a claim that due process rights were violated. Factually, *Ji* is not relevant to the issues before this court.

The State also cites *State v. Jackson*, 223 Kan. 554, 558, 575 P.2d 536 (1978), which states:

"The appellant overlooks the fact plea bargaining is subject to prosecutorial discretion. The effectiveness of plea bargaining can only be fully achieved if it is carefully and discriminately disbursed to those who would benefit the most in the interest of justice. Moreover, a defendant in a criminal action has no constitutional right to plea bargain . . . .

. . . .

". . . We hold the defendant in a criminal action has no absolute right to plea bargain."

Again, we have no problem in agreeing with the rule of law stated in *Jackson*; however, *Jackson* is not applicable. The State misunderstands the issues involved. The critical question on this appeal is not whether Peyton was or was not entitled to a plea bargain. The critical issue is whether the State deprived this defendant of Peyton's testimony by threatening to withhold any plea bargain if Peyton testified on behalf of the defendant. The cases cited to justify the action by the State are simply not applicable to the issues presently before this court.

We agree with the sentiments expressed by the New Jersey court in *State v. Fort*, 101 N.J. 123, 501 A.2d 140 (1985). In that case, the defense witness had entered into a plea bargain that was conditioned on him not testifying on the defendant's behalf. The court held this was a due process violation and stated: "[T]he trial, although inevitably an adversarial proceeding, is above all else a search for truth. That quest is better served when the State does not suppress the truth by sealing the lips of witnesses." 101 N.J. at 131.

In the case now before this court, the State sealed the lips of the defendant's witness. This did not aid the jury in its search for truth. The State's action requires a reversal of the conviction.

We hold that the State in this case effectively deprived the defendant of important exculpatory evidence by threatening his witness with the loss of a plea agreement if he were to testify on the defendant's behalf. This State action violated the defendant's due process right to call witnesses on his behalf and requires the reversal of his conviction. Other citations in accord with our decision include: *United States v. Arthur*, 949 F.2d 211 (6th Cir. 1991); *United States v. Heller*, 830 F.2d 150 (11th Cir. 1987); *United States v. Hammond*, 598 F.2d 1008 (5th Cir. 1979); *United States v. Henricksen*, 564 F.2d 197 (5th Cir. 1977); *United*

*States v. Morrison,* 535 F.2d 223 (3rd Cir. 1976); and *United States v. Thomas,* 488 F.2d 334 (6th Cir. 1973).

Finally, the State argues that even if there was error in this case, it was harmless error.

"An error of constitutional magnitude is serious and may not be held to be harmless unless the appellate court is willing to declare a belief that it was harmless beyond a reasonable doubt. [Citations omitted.] Thus, before we may declare the error harmless, we must be able to declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial. [Citation omitted.]" *State v. White,* 246 Kan. 28, 37, 785 P.2d 950 (1990).

We are simply unable to conclude that the error in this case was harmless. The harmless error theory has been raised by the prosecution in other jurisdictions without success. For instance, in *United States v. Morrison,* 535 F.2d at 228, the court stated: "[W]here the Government has prevented the defendant's witness from testifying freely before the jury, it cannot be held that the jury would not have believed the testimony or that the error is harmless." In *United States v. Hammond,* 598 F.2d at 1013, the court held that the error was not harmless and stated:

"One reason is that this due process violation will almost always be harmful, and it will be very difficult for a court to determine when it is not. This is because a court will seldom be able to determine exactly what evidence would have been brought out had the witness been allowed to testify freely."

We are unable to conclude the error was harmless.

## HEARSAY TESTIMONY

The defendant also argues that the trial court erred in admitting certain hearsay testimony. Since we are remanding the matter for a new trial, we will consider the issue of hearsay testimony for the benefit of the court and the parties in the event of a retrial.

The police officer, during his testimony, was asked if the defendant made any unsolicited comments after he was removed from the car. The officer replied that the defendant denied knowledge of the drugs and said he did not know whose car it was. The officer went on to add:

"The manager, who is a Victor Sheppard, came out while we were still there and he asked us about the car, and he said—he talked about the car out there, the Cordova, that we had taken both—

"MS. JERKOVICH: Objection, hearsay.

"THE COURT: Well, was the defendant present at the time of this conversation?

"THE WITNESS: Yes, he was.

"THE COURT: Very well. It's not hearsay.

"MS. WILKINSON: Are you sure on that?

"THE COURT: Just a minute. It's not hearsay if the defendant is present during the conversation. That's why I asked was the defendant present. Go ahead?

"[OFFICER MINER:] Yes—yes, he was. . . . It was Victor Sheppard that came out; and he came out, he made the comment that I think the car is one of the waitresses there that works at the Rock Island."

The defendant argues that the statement of the manager of the night club recounted by the police officer was inadmissible hearsay. The trial court was incorrect when it concluded that the statement was not hearsay because it was made in the defendant's presence. The State recognizes that the trial court was in error in holding that the testimony was not hearsay and argues that the trial court was "right for the wrong reason." See *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987). The State argues that the statement of the manager would have been admissible under K.S.A. 1992 Supp. 60-460(d)(1) or (2), as a statement made while the declarant was observing the event or as an excited utterance. We do not agree.

We conclude that the statement was inadmissible hearsay. However, under the circumstances shown, the error was harmless and not reversible. See *State v. Bell*, 239 Kan. 229, 235, 718 P.2d 628 (1986). This case did not turn on the question of who the car belonged to or whether it had been stolen. The issue here was whether the defendant was guilty of possessing cocaine. We fail to see how the testimony concerning the possible ownership of the car could affect that issue or change the result of the trial had it not been admitted. The admission of the testimony was error, but harmless error at best. It does not require a reversal of the defendant's conviction.

In the event of a retrial, the manager's testimony should be given firsthand if it is still deemed necessary.

## CLOSING ARGUMENTS

On closing argument, the defendant's counsel began to discuss the evidence presented at trial regarding who owned the car the

cocaine was found in. The State objected, and the trial court sustained that objection. On appeal, the defendant argues that the trial court committed reversible error in sustaining the State's objection to his final argument.

The scope of counsel's closing argument is within the trial court's discretion, and there is no basis for reversal unless that discretion is abused. See *State v. Kuone*, 243 Kan. 218, 234, 757 P.2d 289 (1988). There is nothing in this record to convince us that there was an abuse of discretion on the part of the trial court in sustaining the State's objection. Additionally, even if there was error, it was harmless error at best. We have discussed the concept of harmless error in our analysis of the previous issue and see no need to repeat it here. Suffice it to say, that analysis applies equally to this issue raised by the defendant.

Reversed and remanded.