(21 P.3d 592)

No. 84,253

STATE OF KANSAS, *Appellee,* v. JOHNNY J. MONTES, *Appellant.*

Opinion filed April 6, 2001.

*Daniel C. Estes,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Lesley A. Mcfadden,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GREEN, P.J., BEIER, J., and DAVID PRAGER, Chief Justice Retired, assigned.

GREEN, J.: Johnny J. Montes, Jr., appeals from his conviction of rape, aggravated criminal sodomy, and aggravated kidnapping. On appeal, Montes argues that the evidence was insufficient to convict him of aggravated kidnapping. Montes further contends that the trial court erred in excluding evidence of an alleged incident involving the complaining witness' previous sexual history. Montes additionally contends that the trial court abused its discretion when it directed defense counsel to refrain from commenting during closing argument on a witness' opinion concerning the complaining witness' reputation. Finally, Montes contends that the trial court abused its discretion when it tried him and his codefendant together. We disagree and affirm.

Montes and his cousin, Antonio R. Montes, Jr. (Tony), were charged with raping, sodomizing, and kidnapping E.J. in the course of giving her a ride home. E.J. knew Tony and Montes through her friend, Julia Lerma, and joined the three at a small gathering one fall evening. Earlier in the evening, E.J. spoke to Lerma on the telephone several times. On one occasion, E.J. spoke to Montes. During that conversation, Montes propositioned E.J. and they discussed using cocaine together. Although E.J. admitted to using cocaine in the past, she denied using any that night.

Lerma testified at trial that her intent in inviting E.J. was to "set her up" with Montes. Because E.J. did not have a car, Tony and Montes were sent to pick her up. Tony drove his employer's truck that evening. When they arrived at the party, E.J. sat between Tony and Montes on a loveseat. Although Tony and Montes flirted with E.J. that night, she claimed she did not reciprocate that behavior. In addition, E.J. testified that earlier in the evening Tony kissed her, but she rebuffed his advance.

Later that night, Tony and Montes left the party to take E.J. home. When Tony started driving in the opposite direction of E.J.'s house, she asked where they were going. E.J. testified that Montes replied, "We ain't done with you yet." At that point, E.J. claimed that Tony drove into an alley and held her down while Montes tried to remove her pants. A struggle ensued, and E.J. claimed she kicked out the passenger side window of the truck. E.J. testified

that Tony then decided to drive to a more secluded spot because she was "too fucking loud."

On the way to the second location, E.J. claimed she attempted to stop the truck by grabbing the steering wheel. E.J. testified that Tony raised a beer bottle and threatened her with it. When they arrived at the second alley, E.J. said she was crying but quit fighting because she was scared. Montes then took off E.J.'s pants and raped her. Meanwhile, Tony forced her to perform oral sex on him. When he was finished, Montes told Tony, "It's your turn." Tony then sodomized E.J. while Montes forced her to perform oral sex on him.

After E.J. put her clothes back on, she claimed both Montes and Tony threatened her and admonished her not to tell anyone. In addition, E.J. claimed that Tony said he had a gun and was not afraid to go back to jail. Tony then drove E.J. home. Before she went inside, Tony instructed E.J. to contact him the next morning to arrange for her to pay for the broken window.

The defendants had a very different recollection of the night's events. Both Tony and Montes claimed that E.J. was flirting with them all night. In addition, Tony and Montes admitted that they used cocaine with E.J. on three separate occasions that night. Although Tony acknowledged that the passenger side window in the truck was shattered, Montes testified that he smashed it that night with a crow bar after Tony refused to allow him to borrow the truck. Tony also admitted that he drove from one location to another. Nevertheless, he claimed the first location was to the house of a friend whose bedroom he hoped to use. When he found his friend was not home, the three drove to a quieter spot.

At trial, both Tony and Montes testified that essentially the same sequence of sexual acts occurred, but said they were part of a sex-for-drugs exchange agreed to by E.J. Moreover, the defendants claimed that E.J. both initiated and actively participated in what was characterized as a wild episode of group sex and cocaine use. Nevertheless, when Tony and Montes refused to give E.J. more cocaine after having had sex with her, they claimed she became angry.

E.J. reported the incident to the police that night. E.J. was taken to the hospital for an examination. Aside from superficial lacerations on her right knee, E.J.'s injuries consisted of discomfort in her vaginal and rectal areas. Montes was arrested the next day. Tony and Montes were each charged with rape, two counts of aggravated criminal sodomy, and aggravated kidnapping. Both defendants were tried together, and the jury convicted them on all counts.

Montes first argues that the evidence was insufficient to support his aggravated kidnapping conviction. When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Zimmerman*, 251 Kan. 54, 58, 833 P.2d 925 (1992). Kidnapping is the taking or confining of any person, accomplished by force, threat, or deception with the intent to hold such person to facilitate the commission of any crime. K.S.A. 21-3420.

Montes relies primarily on *State v. Cabral*, 228 Kan. 741, 619 P.2d 1163 (1980), in support of his argument that the confinement of E.J. was merely incidental to committing the other crimes in this case and that his aggravated kidnapping conviction should be reversed. In applying its earlier decision in *State v. Buggs*, 219 Kan. 203, 216, 547 P.2d 720 (1976), our Supreme Court did not find sufficient evidence to support the defendant's conviction for kidnapping in *Cabral*, 228 Kan. at 744. The court in *Buggs* held that in a kidnapping where the victim is taken or confined to facilitate the commission of another crime, the resulting movement or confinement must not be slight, inconsequential, and merely incidental to the other crime; it must not be of the kind inherent in the nature of the other crime; and it must have some significance independent of the other crime in that it makes the other crime substantially easier to commit or substantially lessens the risk of detection. 219 Kan. 203, Syl. ¶ 10.

In *Cabral*, the court reasoned that when a rape occurs in an automobile, some confinement of the woman is a necessary part

of the force required in the commission of the rape. Such a confinement is incidental to and of a kind inherent in the nature of the crime of rape. Accordingly, the court determined that a separate and independent crime of kidnapping was not established by the State. 228 Kan. at 744-45.

Admittedly, the facts in this case are similar to those in *Cabral*. Both in this case and in *Cabral*, the victim was with the defendant for the majority of the evening and voluntarily rode with him in a vehicle several times. In both cases, the defendant started to attack the victim, stopped, and then drove to a different location to commit the rape.

Where the facts of *Cabral* differ from this case is important because it is the basis on which the *Cabral* court reversed the defendant's conviction. In *Cabral*, after the initial attack, the defendant relented and agreed to take the victim back to the dormitory. However, instead of taking the victim to the dormitory, the defendant drove her to a park and raped her. In this case, Tony and Montes allegedly took E.J. to the second location against her will. E.J. actively resisted the initial attack, even kicking out a window of the truck, but she was not released. While en route to the second location, E.J. claimed that she tried to cause an accident by grabbing the steering wheel of the truck. On the other hand, the court, in reversing Cabral's conviction for kidnapping, relied on the victim's willingness to remain in the car with the defendant after the initial attack. *State v. Blackburn*, 251 Kan. 787, 794, 840 P.2d 497 (1992). See also *State v. Coberly*, 233 Kan. 100, 105-06, 661 P.2d 383 (1983); *State v. Lile*, 237 Kan. 210, 214, 699 P.2d 456 (1985) (distinguishing *Cabral* and upholding separate convictions for rape and kidnapping).

The State presented sufficient evidence that E.J. was taken by force from one alley to another where she was raped and sodomized. Because the movement and confinement of E.J. in the truck was committed for the purpose of decreasing the risk of detection, the movement and confinement of E.J. was not of a kind inherent in the nature of forcible rape and sodomy and was not incidental to the commission of the crimes of rape and sodomy. As a result, Montes' argument fails.

Next, Montes argues that evidence of a similar sex-for-drugs exchange involving E.J. should have been admitted. Under K.S.A. 21-3525(b), defense counsel moved to admit this evidence and filed an affidavit. The court conducted an *in camera* hearing. During the hearing, defense counsel proffered the testimony of Montes' brother, Jaime, who claimed that he had had sex with E.J. after he told her he could procure cocaine for her. This incident happened 1 or 2 months prior to Montes' arrest. The court denied the motion, ruling the evidence was irrelevant.

Evidence of a rape victim's previous sexual conduct is generally inadmissible. K.S.A. 21-3525(b). However, the rape shield statute does not preclude the admission of relevant evidence that impeaches the credibility of the witness. K.S.A. 21-3525(b). Moreover, the rape shield statute allows evidence of an alleged rape victim's previous sexual conduct if such evidence is relevant to any fact at issue, such as the identity of the rapist, consent of the victim, and whether a defendant actually had intercourse with the victim. *State v. Perez*, 26 Kan. App. 2d 777, 780, 995 P.2d 372 (1999), *rev. denied* 269 Kan. 939 (2000).

Relevant evidence is evidence having any tendency in reason to prove any material fact. K.S.A. 60-401(b). Decisions regarding the relevance of evidence rest within the sound discretion of the trial court, which should not be set aside absent a showing of abuse of discretion. *State v. Lavery*, 19 Kan. App. 2d 673, 680, 877 P.2d 443, *rev. denied* 253 Kan. 862 (1993). Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable; in other words, when no reasonable person would take the view adopted by the trial court. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. *State v. Walker*, 252 Kan. 279, 285-86, 845 P.2d 1 (1993).

When addressing the relevance of prior sexual conduct on the issue of consent, the inquiry must be whether the victim's consent to sexual activity in the past, regardless of other factual situations, makes it more or less probable that the victim consented to sexual activity on this occasion. To determine whether the previous sexual conduct of a victim is relevant, the *Perez* court has offered several

factors for consideration. Among them are whether distinctive sexual patterns so closely resembled the defendant's version of the alleged encounter so as to tend to prove consent or to diminish the victim's credibility on the questioned occasion. *Perez*, 26 Kan. App. 2d at 781. Montes maintains that because of the factual similarities between the events of the evening in question and the incident with Jaime, that is, the exchange of sexual favors for cocaine, E.J.'s previous sexual behavior is absolutely relevant.

On the other hand, the State responds that the two incidents do not resemble one another. While some of the minor factual details between the two incidents vary significantly, there is one key factual similarity: E.J.'s alleged propensity for trading sexual favors for drugs. What Montes fails to acknowledge, however, is that the incident involving Jaime was simply not a sex-for-drugs transaction. Jaime testified he never gave E.J. any cocaine in exchange for her sexual favors. Montes on the other hand alleged that he gave E.J. cocaine three times that night before the charged acts occurred.

Furthermore, the previous incident, where E.J. allegedly engaged in sexual intercourse and oral sex with Jaime, is dissimilar from the charged acts, where E.J. allegedly engaged in sexual intercourse and oral sex with Montes and Tony at the same time. The previous incident fails to show that E.J. was willing to engage in intercourse and oral sex with multiple partners simultaneously.

Finally, the *Perez* court stated that the proximity in time between the prior sexual conduct and the charged act of the defendant should also be considered when addressing whether the prior sexual conduct of a complaining witness is relevant. In the instant case, the proximity factor is lacking. Jaime testified that his alleged sexual encounter with E.J. occurred 1 or 2 months prior to his brother's arrest. Montes was arrested the day after the charged acts occurred. The proximity factor is not satisfied. See *State v. Bourassa*, 28 Kan. App. 2d 161, 15 P.3d 835 (1999); *Perez*, 26 Kan. App. 2d at 781. Because of the previously mentioned reasons, the trial court properly excluded this evidence.

Montes next argues that the trial court committed reversible error when it instructed defense counsel, *sua sponte*, not to mention or draw any inferences from one witness' statement about

E.J.'s sexual history. Lerma, one of the State's witnesses, testified that it was her intent to "set up" E.J. and Montes on the night of the charged events. When defense counsel asked Lerma on cross-examination why she chose E.J. for Montes, she replied, "Because she's easy."

Montes essentially argues that the court's ruling deprived him of his due process rights. The opportunity to make closing arguments is basic to the right of the defendant in a criminal trial to make his or her defense. *Herring v. New York*, 422 U.S. 853, 858, 45 L. Ed. 2d 593, 95 S. Ct. 2550 (1975). Nevertheless, the scope of closing argument is within the trial court's discretion, and there is no basis for reversal unless that discretion is abused. *State v. Asher*, 18 Kan. App. 2d 881, 889, 861 P.2d 847 (1993). Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999).

Clearly, Lerma's statement that E.J. is "easy" implies that E.J. has a reputation for promiscuity. Although the trial court overruled the State's objection and motion to strike the statement from the record, the trial court should have sustained the State's objection and struck the statement from the record. In discussing the application of the rape shield statute, K.S.A. 60-447a (Weeks) (now K.S.A. 21-3525[b]), this court in *In re Nichols*, 2 Kan. App. 2d 431, 434, 580 P.2d 1370 (1978), noted that generally "a victim's lack of chastity has no bearing whatsoever on her truthfulness and generally has no bearing on the important issue of consent." Because Montes failed to show that E.J.'s alleged promiscuity had a bearing on her truthfulness or her consent, the trial court properly restricted defense counsel from commenting on that statement during closing argument.

Finally, Montes argues that the trial court erred when it consolidated both defendants' cases for trial. The State correctly points out that, despite Montes' assertions to the contrary, the two defendants were never charged separately. In the original complaint, both Montes and Tony were named in the caption and in the body of the complaint. The amended complaint, which added the charge

of aggravated kidnapping, charged Montes separately in the caption, but named both in the body of the complaint.

Two or more defendants may be charged in the same complaint if they are alleged to have participated in the same criminal acts. K.S.A. 22-3202(3). When two or more defendants are jointly charged with any crime, the court may order a separate trial for any one defendant when requested by such defendant or by the prosecutor. K.S.A. 22-3204. The implication, then, is that absent such a request, defendants who are charged together will be tried together. Neither defendant in this case requested separate trials.

Each defendant was given a separate case number. It also seems that each defendant was given different trial dates. When the State moved to consolidate these cases, the trial court granted the motion. Although the prosecutor noted that the cases were considered consolidated from the filing of the initial complaint, the prosecutor wanted to ensure the defendants would be tried together.

Even assuming *arguendo* that the defendants were not charged together, it was still appropriate for the trial court to consolidate both cases for trial. Two or more defendants may be later joined for trial if the defendants could have been charged in the same complaint. *State v. Butler*, 257 Kan. 1043, 1063, 897 P.2d 1007 (1995). The determination of whether defendants charged separately may be tried together is within the trial court's discretion and is therefore reviewed for an abuse of discretion. *State v. Smith*, 268 Kan. 222, 233, 993 P.2d 1213 (1999).

Clearly, the defendants in this case could have been charged together in the same complaint because they both participated in the same series of acts constituting the crimes charged. K.S.A. 22-3202(3). The question, then, is whether Montes was actually prejudiced by the joinder. *State v. Aikins*, 261 Kan. 346, 360, 932 P.2d 408 (1997). Kansas courts have recognized that a defendant can demonstrate actual prejudice mandating severance by showing the defendants have antagonistic defenses. *Aikins*, 261 Kan. at 360.

Montes claims the consolidation of trials prohibited him from pursuing a defense inconsistent with Tony's. Montes acknowledges that in order to prevent joinder, he must demonstrate that the defenses conflict to the point of being irreconcilable and mutually

exclusive. *State v. Anthony*, 257 Kan. 1003, 1018, 898 P.2d 1109 (1995). In other words, the defendants must implicate each other. Montes has never claimed he had such a defense. While Montes takes issue with our Supreme Court precedent on this point, the law is clear and this court is duty bound to follow it. As a result, the trial court properly consolidated the cases for trial.

Affirmed.