NOT DESIGNATED FOR PUBLICATION

No. 127,709

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GODOFREDO A. CALDERON-MENDOZA,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TYLER ROUSH, judge. Submitted without oral argument. Opinion filed March 27, 2026. Affirmed.

*Michael J. Studtmann*, of Wichita, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., BRUNS and SCHROEDER, JJ.

PER CURIAM:  A jury convicted Godofredo A. Calderon-Mendoza of multiple child sex offenses. He appeals his convictions, arguing the district court erred in excluding evidence that the victim had previously alleged sexual abuse by a family member. Because we find the district court did not err in finding that the evidence that Calderon-Mendoza sought to admit was not relevant, therefore inadmissible, we affirm.

1

The State charged Calderon-Mendoza with multiple crimes involving A.M. (born in 2003) between January 2015 and March 2019. The charges included two counts of aggravated indecent liberties with a child, one count of criminal sodomy, two counts of indecent liberties with a child, and one count of aggravated intimidation of a witness, all felonies.

Shortly before the scheduled jury trial, Calderon-Mendoza's attorney filed a "motion in limine" seeking an order allowing admission of investigative notes from a detective in the Wichita Police Department pertaining to a prior allegation of sexual abuse involving A.M. In short, defense counsel explained that the victim's mother, A.H., had recently told the victim witness coordinator about allegations made in 2015, against A.H.'s father, A.M.'s grandfather. These allegations resulted in the grandfather dying by suicide and prompting further investigation by the Wichita police. Counsel requested a hearing on the relevance of the information and the investigative notes, as well as an order regarding their potential admission into evidence at trial.

A.H. testified at the motion hearing that she had spoken with the State's victim witness coordinator the previous week about the prior allegation of sexual abuse involving A.M. According to A.H., A.M. and her twin brother C.M. had revealed in early January 2015 that their grandfather, A.H.'s father, had asked them to touch his penis when they were younger. A.H. said A.M. and C.M. were 10 or 11 years old at that time, but the incident would have occurred when they were in elementary school. A.H. said she "struggled with it that night on whether I should say anything or what to do," and Calderon-Mendoza had told her, "it wasn't a big deal" and "not to worry about it." The next day, A.H. called her mother, who was having lunch with the grandfather, and "he was confronted, some things were said," and he committed suicide later that same day. A.H. said the children—who were now 20 years old—had "[v]ery limited memories" of

the incident, but they were generally aware that their grandfather had committed suicide after being confronted.

Calderon-Mendoza's attorney argued that he wanted to present evidence about the allegation at trial because of the potential overlap with the dates of his alleged offenses against A.M. He also argued the evidence was relevant because it was "an event that occurred in the family that was profound" and he wanted "the jury to be able to know all the facts" to make a decision. Further, the evidence would be relevant since A.M.'s allegations about Calderon-Mendoza would only be based on her oral testimony, not any physical evidence. The State responded that the prospective evidence was not relevant because it was a separate incident, involved entirely different circumstances, and there had been nothing presented to show that the prior allegation was false.

The district court denied Calderon-Mendoza's motion. The court found that the prior allegation was not relevant, citing several reasons: (1) The "interaction between" the dates of Calderon-Mendoza's alleged offenses and the prior allegation "is extraordinarily slim"; (2) Calderon-Mendoza's alleged offenses occurred over several years and were after the prior allegation; (3) A.M. and C.M. had little recollection of the prior allegation; (4) the prior allegation involved both children, while Calderon-Mendoza's alleged offenses involved only A.M.; and (5) the fact that the grandfather committed suicide after being confronted "is fairly strong evidence, in my opinion, that [he] believed he was guilty of that conduct."

At trial, the State's case consisted entirely of witness testimony, including A.M., A.H., three of A.M.'s siblings, and the Wichita police officer who interviewed all five witnesses. The State also admitted videos of each interview into evidence and played them for the jury.

The first incident of sexual abuse, as described by A.M., occurred when she was between the ages of 11 and 13. She and Calderon-Mendoza were alone in his car in the driveway, about to go to McDonald's. Calderon-Mendoza began touching A.M.'s vagina over her clothes with his hand, which lasted for a couple of minutes until he stopped. A.M. was trying to distract herself by watching a video on her phone. At the time, Calderon-Mendoza was over the age of 18, around 30 or 40 years old by A.M.'s estimate.

A.M. said similar incidents happened "constantly" over the next few years, but not every day. A.M. lived in the same house as Calderon-Mendoza, along with her three brothers— D.C., C.M., and N.M.—and her mother, A.H., when she was between the ages of 11 and 15. While A.H. was at work and A.M.'s brothers were busy elsewhere in the house, Calderon-Mendoza would tell A.M. to go into his bedroom and then he would lock the door. Calderon-Mendoza would then take off A.M.'s pants, touch her vagina with his hands, and lick her vagina. He would also fondle her legs, butt, and breasts. On one occasion, he digitally penetrated her vagina. During March 2019, A.M. estimated he was performing these actions two to three times a week. A.M. told all this information to Officer Kevin Brown during an interview, using a diagram to show parts of her body that Calderon-Mendoza had touched.

A.M. further testified that when she would tell Calderon-Mendoza what he was doing to her was wrong, he told her they would both get in trouble if she told anyone. About a year before she told the police, A.M. had told N.M. and C.M. what was happening. They wanted to inform A.H. but A.M. was worried about how it would affect their family, so she asked them not to tell anyone. A.M. also lied and told her brothers the abuse had stopped, even though it was still ongoing.

About a year later, A.M. said she woke up one morning and learned that Calderon-Mendoza had struck D.C. with a sandal because he was angry. She decided to tell her brothers that Calderon-Mendoza was still sexually abusing her because she believed the

abuse was "just going to get worse" for all of them. N.M. called A.H., then A.M. told A.H. what had been happening. A.H. told the children to go to their grandmother's house, where she met them later that day.

A.H. testified that A.M. initially told her on the phone call only that Calderon-Mendoza "touches me," but A.M. later provided more details when they were speaking alone. A.H. said her mother knew someone who was a mandatory reporter, so that person spoke with A.M. and reported the allegations to the police. After that, A.H. took the children to the Child Advocacy Center to be interviewed.

N.M., C.M., and D.C. provided similar testimony to corroborate A.M.'s testimony, which was that A.M. had only disclosed Calderon-Mendoza was touching her inappropriately and that it did not go as far as sexual intercourse. They each also remembered instances of trying to go into Calderon-Mendoza's bedroom and finding that the door was locked while A.M. and Calderon-Mendoza were inside.

After the State rested, Calderon-Mendoza moved for a directed verdict on the off-grid charge on the grounds that it had not been shown that A.M. was under 14 years old at the time of the alleged acts. The district court denied the motion, finding there was enough evidence to support the charges when viewed in the light most favorable to the State. Calderon-Mendoza also renewed his objection to the motion in limine. The court adhered to its prior ruling, noting that A.M.'s testimony describing the "ongoing nature" of the abuse and her disclosures to her siblings "extends the irrelevance" and "further distanced the relationship" between the prior allegation against the grandfather and Calderon-Mendoza's alleged conduct.

Calderon-Mendoza also testified in his defense, denying that he had ever touched A.M. inappropriately. Yet he admitted using corporal punishment against the children at times when he got "very angry" and felt like he "crossed the line" at times. On cross-

examination, he acknowledged there were many times he was alone in the house with the children. He recalled at least one time when he was in the bedroom with the door locked, and A.M. was in the bathroom at the same time. He was watching TV from the bed and noticed somebody came in to use the restroom, so he closed the bedroom door but did not lock it. He noticed the door was locked afterward when C.M. came looking for A.M.

The jury ultimately convicted Calderon-Mendoza on all counts.

Calderon-Mendoza later filed a motion for new trial and judgment of acquittal based on the exclusion of evidence about A.M.'s prior allegation of sexual abuse by her grandfather. He argued that excluding the evidence deprived him of the right to present a complete defense, and that there was insufficient evidence to support his convictions.

The district court denied Calderon-Mendoza's motion for new trial and judgment of acquittal at sentencing, adopting its previous rulings at trial. After he was sentenced, Calderon-Mendoza timely appealed.

ANALYSIS

The sole issue Calderon-Mendoza raises on appeal concerns the district court's denial of his motion in limine, which resulted in excluding any evidence of a prior allegation of sexual abuse committed upon the same victim by a different perpetrator. According to Calderon-Mendoza, excluding this evidence significantly prejudiced his defense and deprived him of his constitutional rights to due process and a fair trial.

As the Kansas Supreme Court explained in *State v. Shadden*, 290 Kan. 803, 816, 235 P.3d 436 (2010), appellate courts reviewing a decision on a motion in limine consider the same two factors as the district court. First, the court considers whether the evidence will be inadmissible at a trial. Next, it considers whether the court is justified in

6

making the ruling before trial rather than assessing the "value and utility of [the] evidence and its potential prejudice" during trial. 290 Kan. at 816.

Because the court found the evidence was not relevant, and therefore was inadmissible under the first factor, that is the only question before us on appeal.

*Our standard of review is grounded in relevancy and prejudice.*

The threshold question on the admission or exclusion of evidence is whether the evidence is relevant. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021). Relevant evidence means it is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). Relevance has two elements: a materiality element and probative element. 313 Kan. at 237. Appellate courts review materiality using a de novo standard of review, but review whether evidence is probative under an abuse of discretion standard. *State v. Alfaro-Valleda*, 314 Kan. 526, 533, 502 P.3d 66 (2022).

Next, the court must determine whether the probative value of the evidence is outweighed by its potential for producing undue prejudice. K.S.A. 60-445. Appellate courts review a district court's weighing of these factors for an abuse of discretion. 314 Kan. at 535.

Because the district court referenced application of the rape shield statute, whether the statute applies and how it is applied is a question of law subject to de novo review. See *State v. Daniels*, 319 Kan. 340, 342, 554 P.3d 629 (2024). Here, Calderon-Mendoza asserts that the district court relied on the rape shield statute, K.S.A. 21-5502, in denying his motion, a decision which the Kansas Supreme Court has said "will not be overturned on appeal if reasonable minds could disagree as to the court's decision." *State v. Berriozabal*, 291 Kan. 568, 586, 243 P.3d 352 (2010).

7

*The rape shield law is examined.*

Kansas' rape shield law, codified at K.S.A. 21-5502, generally prohibits the admission of evidence concerning a complaining witness' previous sexual conduct in prosecutions for rape and other specified sex offenses—including the offenses charged here against Calderon-Mendoza. See K.S.A. 21-5502(a)(2), (3), (4). "In passing Kansas' rape shield statute, the legislature sent a clear message to the courts that a rape victim's prior sexual activity is generally inadmissible since prior sexual activity, even with the defendant, does not of itself imply consent." *Berriozabal*, 291 Kan. 568, Syl. ¶ 11. So the default is that prior sexual acts of the victims of these listed crimes are not admissible. But the statute does provide specific procedural mechanisms through which defendants may seek admission of such evidence when it is relevant and otherwise admissible. See K.S.A. 21-5502(b).

Kansas courts have identified several circumstances where prior sexual conduct evidence may be relevant and admissible. Evidence may be material "if it is relevant to issues such as the identity of the rapist, consent of the complaining witness, or whether the defendant actually had intercourse with the complaining witness." *Berriozabal*, 291 Kan. at 586. Courts have also considered "the proximity in time between the prior sexual conduct and the charged act of the defendant" when addressing relevance to consent or credibility. *State v. Montes*, 28 Kan. App. 2d 768, 774, 21 P.3d 592 (2001).

The rape shield statute "does not preclude the admission of relevant evidence that impeaches the credibility of the witness." 28 Kan. App. 2d at 773. But evidence of prior false *accusations* by the victim is not considered "prior sexual conduct" subject to the rape shield statute. *State v. Barber*, 13 Kan. App. 2d 224, 226, 766 P.2d 1288 (1989). "Such prior accusations are admissible only if a reasonable probability of falsity exists." 13 Kan. App. 2d at 226.

And with child victims, when confronted with the issue our court has required the defendant to show in camera that the victim previously had been exposed to a sexual act and that the prior act was "'sufficiently similar to the sexual act charged to give the victim the experience and ability to contrive or imagine the act charged.'" *State v. Foshee*, No. 90,270, 2004 WL 1373294, at *2 (Kan. App. 2004) (unpublished opinion); see also *State v. Lavery*, 19 Kan. App. 2d 673, 682-83, 877 P.2d 443 (1993) (adopting the reasoning of *State v. Oliver*, 158 Ariz. 22, 28-29, 760 P.2d 1071 [1988]).

*Calderon-Mendoza relies on an inapplicable standard of review and fails to address the appropriate standard.*

Calderon-Mendoza argues that the district court abused its discretion by applying the rape shield statute to exclude the evidence. But in *Shadden* the Supreme Court held that simply applying an abuse of discretion standard to the first factor is no longer appropriate because the admissibility of evidence involves a multistep evidentiary standard, which can involve de novo review or other standards depending on the applicable evidentiary rule or principle. 290 Kan. at 817. Calderon-Mendoza does not discuss in briefing whether the evidence was material or probative, let alone whether the probative value was outweighed by the potential of undue prejudice. Accordingly, he has waived any challenge to its materiality or probative value when weighed against potential prejudice. See *State v. Gallegos*, 313 Kan. 262, 277, 485 P.3d 622 (2021).

*The district court did not err in concluding that the evidence of prior sexual abuse by a different family member was not relevant.*

Relevant evidence means "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b). This case involved allegations of sexual abuse of A.M. by Calderon-Mendoza over a four-year period. Calderon-Mendoza's defense was a complete and total denial that he had ever touched A.M. sexually or inappropriately. He admitted using corporal punishment against the children at times when he got "very

9

angry" and felt like he "crossed the line" at times. Calderon-Mendoza based his defense on challenging A.M.'s credibility by suggesting that she wanted to get him out of the house to protect her and her brothers from his physical abuse—not her ongoing sexual abuse. So we turn to the relevance of the evidence sought to be admitted of abuse by A.M.'s grandfather as it relates to Calderon-Mendoza's defense.

Calderon-Mendoza does not claim that A.M.'s grandfather was the perpetrator of the abuse alleged by A.M. to have been committed by Calderon-Mendoza. The allegations against Calderon-Mendoza were alleged to have begun in January 2015. Although the allegation against the grandfather was revealed in January 2015, the children told their mother it occurred when they were younger. The only overlap concerns when A.M.'s grandfather was confronted with the allegations against him, not when the abuse occurred. As the district court found, the prior allegation involving A.M.'s grandfather involved entirely different conduct, was remote in time, involved both A.M. and her brother, and would have occurred in its entirety earlier than the first and subsequent alleged incidents involving Calderon-Mendoza described by A.M. at trial. So it was not relevant to establish the identity of her abuser or the similarity of the accusations.

Calderon-Mendoza has never claimed the prior allegation involving A.M.'s grandfather was false, and no evidence suggested that to be the case. So the evidence was not relevant to establish a lack of credibility on A.M.'s part. Although not a definitive confirmation, the grandfather's death by suicide after the allegation came to light paints a strong inference of guilt—supporting the truth of her allegations, not the falsity.

There was no claim that evidence of her grandfather's abuse showed that A.M. consented to abuse by Calderon-Mendoza. Even if it did, A.M.'s age was a legal bar to any claim of consent.

We find that there is no basis to support finding that the evidence Calderon-Mendoza wanted admitted was relevant and the district court did not abuse its discretion in finding the evidence was therefore not probative as it related to Calderon-Mendoza's defense.

Affirmed.